(No. 2691.    Jan.   7,   1924.   Rehearing   Denied
Feb. 18, 1924.)

## YOUNG et al. v. VAIL et al.

### SYLLABUS BY THE COURT.

1.   The matters set up by a cross-complaint must relate to or be connected with the subect-matter of the original complaint, and the two constitute but one suit; and a new party cannot be brought in by cross-complaint unless his presence be necessary to a complete determination of the plaintiff's action.

2.   When a new party, brought in by cross-complaint, appears, he becomes a party to the whole suit, and is bound by the judgment as to all matters which are or might be litigated therein, including the matters covered both by the complaint and by the cross-complaint; and, if the complaint be defective by reason of his not having been made a party, such defect is cured by such subsequent appearance.

3.   The Code of Civil Procedure has not assumed to abolish the distinctions between law and equity considered as two complementary departments of our system of jurisprudence, nor to substitute new primary rights, duties, or liabilities for those embodied in either department of the municipal law.

4. In a suit to foreclose a mortgage, the parties have no right to a trial by jury of the issue of indebtedness, even though that be the only issue left in the case.

5. Where a court of equity acquires jurisdiction for the foreclosure of a mortgage, it may retain jurisdiction for the administration of full relief, both legal and equitable, and, as a part of such relief, may render a deficiency judgment, and the parties have no right to a jury for the trial of that issue.

6. The territorial equity courts had jurisdiction to render deficiency judgments in foreclosure suits, and, consequently, there was, prior to the Constitution, no right to jury trial for the adjudication of the amount of such deficiency, and, since the state Constitution guarantees to litigants the same right to trial by jury as existed prior to the adoption of the Constitution, a party is not now entitled, as a matter of right, to a jury for the trial of the issue of deficiency in foreclosure.

7. A defendant in a foreclosure suit, who voluntarily interposes a cross-complaint of a legal nature, is not entitled to a jury trial of the issues raised thereby.

8. It is not error for the court to hear evidence for the purpose of determining whether or not an injustice will be done by the granting of a motion to dismiss, where such motion is opposed on that ground by the adverse party.

### SYLLABUS ON REHEARING.

One who pleads a breach of the contract, in consideration of which a mortgage is given, as a defense to a suit in equity for the foreclosure of such a mortgage is not entitled to have the issues raised thereby tried by a jury.

Appeal from District Court, Colfax County; Leib, Judge.

Suit by John F. Vail against C. A. Young and W. C. Ferguson, in which defendants filed a cross-petition making the Maxwell Irrigated Land Company and another parties defendant. From a decree overruling defendant's demurrer to the complaint, and foreclosing a real estate mortgage, defendants Young and Ferguson appeal. Affirmed.

H. L. Bickley and H. A. Kiker, both of Raton, for appellants.

The court erred in overruling the demurrer filed by defendants to plaintiff's complaint on May 6, 1918. The grounds were that the interest of John F. Vail

is not shown in the complaint, and that the complaint consequently does not state facts sufficient to state a cause of action; and that there is a defect of parties; and that The Maxwell Irrigated Land Company is a necessary party to the action, as shown upon the face of the complaint.

The assignor of a mortgage, assigned conditionally or as collateral security, is a necessary party to an action for the foreclosure of the mortgage. Wiltsie on Mortgage Foreclosure, Third Edition, Sec. 201, p. 302; Sec. 349, p. 489 and Sec. 106; Standard Encyclopaedia of Procedure, Vol. 19, p. 920; 27 Cyc. 1565, 1566.

We are not unmindful of Sections 4069 and 4070 of the Codification of 1915, but this latter statute has no reference, we believe, to defendants to an action. As to plaintiffs it is permissive only. It does not restrict the right of joinder, but allows suit in the name of the assignee without joining the assigner with the plaintiff.

The California statute provides "A trustee of an express trust may sue without joining the person for whose benefit the action is prosecuted"; and the Supreme Court of that state has held "The provisions of section 3699 are permissive only." Hall v. Southern Pac. Co., 180 Pac. 20.

It is immaterial whether a necessary party be a party plaintiff or defendant, so that the party is before the court and his rights may be submitted in the action.

As to necessity for making the assignor, or mortgagee, a party to the action where the assignment is anything less than absolute and unconditional, see Miller v. Henderson, 10 N. J. Eq. 320; Inghan v. Weed. 48 Pac. 318; Stevens v. Reeves, 33 N. J. Eq. 427; Ackerson et al v. The Lodi Branch Ry. Company, 28 N. J. Eq. 542; Langley v. Andrews, 31 Southern, 468.

When the mortgage was assigned, or pledged, as collateral security, without agreement as to powers of

assignee, there could be no express trust, for payment of the debt would release the pledge. In case of such assignment, if a trust arises, as we have no doubt is possible, that trust is a resulting and not an express trust. Eagle Mining & Improvement Co. v. Hamilton et al, 91 Pac. 718.

There is no allegation of an express trust in the complaint. How can it be shown? Ward v. Buchanan (N. M.), 160 Pac. 356. Without allegation of circumstances, surely there can be no proof thereof. Cartwright & Bro. v. U. S. Bank & T. Co., 167 Pac. 436, adopting the declaration of Perry on Trusts. From the foregoing citations, and the facts alleged in the complaint, we submit that The Maxwell Irrigated Land Company was an indispensable party to the suit brought by plaintiff; and that the court had no authority to proceed to judgment without that party before the court and that the court erred in overruling demurrer to plaintiff's complaint.

Did the court err in refusing a jury trial on the issues raised by complaint and answer? Upon the complaint and answer there was only one question for trial: was the amount of money claimed in plaintiff's complaint, or any amount of money, owing to plaintiff on account of the mortgage note and mortgage? If there was, then nothing could prevent the foreclosure. That was the sole issue for trial.

The construction placed upon Section 4068 of the 1915 Code is that the term suit at law is used in its broadest sense and was intended to authorize the aid of equity in any pending legal proceeding whenever necessary to give a more complete and effectual remedy. In re Sloan, 5 N. M. 590, 25 Pac. 930. See also Sec. 4067, Code of 1915.

We believe that in those states where the distinction between law and equity are abolished, by a code of procedure which provides for a single form of action in one court wherein principles of both law and equity are administered, the determination as to whether a

suit is primarily at law or in equity must be made in each case separately from its status when it comes before the court and not from any general consideration such as that foreclosure is sought. 27 Cyc. 1514; Brim v. Fleming, 37 S. W. 501; State Journal Co. v. Commonwealth Co., 22 Pac. 982.

We believe the test as to right to trial by jury is not what the action is called, and is not what some of the relief prayed may be, but what the real issue for trial is when the case comes before the court. If that issue is the right to recover money, then the case should be submitted to the jury. We may also properly remark, we think, that it is not the conclusion of the case, or what the court actually does in the decree, that determines the nature of the action, but it is what the issue is, and what is sought when the case comes to trial. Maas et al v. Dunmyer, 96 Pac. 591; Wiscomb et al v. Cubberly, 33 Pac. 320. The Oklahoma statutes referred to in the Maas case, supra, are in all essentials identical with Sections 4393 of our Code. See also Baca v. Anaya, 14 N. M. 382, 89 Pac. 314; Wiltsie on Mortgages, Third Ed. Par. 11, page 11; Tyson v. Walker, 2 So. 901.

If it be said that no money judgment was sought against either Young or Ferguson, we answer that such judgment was sought against Max Campbell and Hettie Campbell and that the nature of the action was thereby determined. We further say that the allegations of money owing were specifically denied by Young and Ferguson and the only issue before the court was whether money was owing on the mortgage debt. Wiltsie on Mortgages, Third Ed., Par. 8 Page 9; 27 Cyc. 1751; Cobb v. Duke, 72 Am. Dec. 157; Mahaska v. Bennett, 129 N. W. 838. The right to a deficiency judgment in foreclosure is purely statutory. Wiltsie on Mortgage Foreclosure, Third Ed., Par. 13, Page 15; Wisconsin Nat. Loan & Bldg. Assoc. v. Pride, 116 N. W. 637. See also: Wiltsie, 3rd Ed., Par. 733, pages 1071-1074; Id. Sec. 733, page 1078; Id. Sec. 754, page 1103;

Powell v. Patinson, 34 Pac. 676; Bailey et al v. Block, 134 S. W. 323.

Did the court err in refusing a jury trial upon the issues raised upon the cross-complaint? The demand for jury trial upon the issues raised by it was at all times kept good. There can be no question of waiver of the right, if a right existed. Section 4189 of the 1915 Code; Chapter 46 of the Laws of 1917; Baca v. Anaya, 14 N. M. 382; Curtis v. Sutter, 15 Calif. 259; Hill v. Phillips et al 7 S. W. 917; Swasey v. Adair, 25 Pac. 1119; Tapley v. Herman, 69 S. W. 482; Small v. Reeves, 46 S. W. 726; Miley v. Heaney et al, 157 N. W. 515; Scott v. Nichols, 61 Am. Dec. 503; Sec. 4116 of the 1915 Code.

Again we insist that there is no such thing as an action at law in this state. We have only a civil action. In such an action there may be united both legal and equitable causes as formerly designated. The same is true with the answer, and the same is true with the cross-complaint; and by our Constitution, Art. 2, Sec. 12, the right to trial by jury remains inviolate as it existed prior to the Constitution. Wherever and whenever an issue purely legal in its nature is raised, that issue is, of right, to be tried by a jury.

Even though the complaint be treated as stating a cause of action purely equitable in its nature, still the defendants are entitled to a trial by jury where the equitable right depends upon the legal issues raised in the cross-complaint. Sandstrom v. Smith et al, 86 Pac. 416; Donahue v. Meister, 88 Cal. 121, 22 Am. St. Reports; Carter et al v. Weisenburg, 23 S. W. 964; Herb v. Metropolitan Hospital and Dispensary, 80 N. Y. Suppl. 552; Gordon v. Munn et al, 83 Kan. 242, 111 Pac. 177; Southern Railway, Carolina Division, v. Howell, 89 So. Car. 391, 71 S. E. 972; 16 R. C. L. 212, Section 29, under Jury.

The court erred in refusing to permit the defend-

ants, Young and Ferguson, to dismiss their cross-complaint. Andrews v. French, 17 N. M. 615.

Appellants' reply brief to brief and argument of John F. Vail, appellee.

Was John F. Vail, the plaintiff, the real party in interest? His exact interest in the litigation is nowhere stated in the complaint. It is not stated for what amount John F. Vail took the note and mortgage in question as collateral security. It is not stated what amount John F. Vail was entitled to receive for his own use. It is stated, however, that John F. Vail, the plaintiff, took the note and mortgage as collateral security only, that declaration is in paragraph 8 of the complaint, page 5 of the transcript, and is the only declaration of the interest of John F. Vail stated in the complaint. We have contended, and we now contend, that the complaint fails to state a cause of action, because it does not show the interest of John F. Vail in the action. The Court cannot make a decree upon the declarations of the complaint as to what John F. Vail shall for his own use receive. We refer again to the necessary requirements for an assignee's declaration as found in Section 349, Wiltsie on Mortgage Foreclosure. 9 Encyclopaedia of Pleading and Practice, under title of Foreclosure of Mortgages, page 277; 21 Standard Encyclopaedia of Procedure, under Pledges, page 458 and page 459; Van Deventer v. Stiger, 25 N. J. Eq. 224; Cooper et al v. Smith, 42 N. W. 815.

The written instrument, being set out haec verba and made a part of the complaint, the allegations and conclusions of the pleader with reference to indorsement must yield to the showing on the face of the instrument itself. The allegations of the pleader fail and are mere surplusage, unless they are supported by the showing of the written instrument. 31 Cyc. 66.

As to the necessity for making the mortgagee, who has assigned his mortgage as collateral security, a party to the action, see Jones on Mortgages, Sixth Ed., Vol.

2, page 338, Sec. 1374; Standard Encyc. of Procedure, Vol. 21, page 459; Lewando v. Dunham, 1 Hilton 114; Western Bank v. Sherwood; 29 Barb. 389; Secor v. Kellor, 4 Duer 416; Cerf et al v. Ashley et al, 9 Pac. 658; Brown v. Mann, 12 Pac. 51; Gilbert v. Thayer, 10 Pac. 148.

The purpose of foreclosure by a pledge is to reduce the pledged property to the payment of the debt for which the pledge was given. That is certainly one of the purposes for which every such suit is brought. 19 R. C. L. 525, Sec. 327.

Now, it is a generally established proposition of law that in case the assignee of the mortgagee forecloses without making the assignor a party and purchases at the foreclosure sale, he will hold the property as he did the mortgage subject to redemption by the assignor upon the payment of his debt. The doctrine of merger will not operate to deprive the assignor of his right in such a case. In equity merger is never allowed against the interest of the parties of their obvious intentions, or where two estates are held in different ranks. Gilbert v. Thayer, 10 N. E. 148. Brown v. Tyler, 69 American Decisions, 239. First National Bank v. Ohio Falls Car & Locomotive Works, 20 Fed. 65. See also Anderson v. Ollen, 34 N. E. 55.

It is possible, in the case of pledges of property as collateral security, for the pledgor to still possess an interest in that very property. He retains an interest, a beneficial ownership which he may sell. That situation arose in the case of Brown et al v. Hotel Assoc. of Omaha et al, 88 N. W. 175.

We shall now consider the necessity of making the assignor a party where the assignment of a negotiable promissory note, secured by mortgage, is by delivery only, the note not being indorsed and there being no written assignment.

At common law, such delivery did not entitle the person receiving the note and mortgage to maintain

an action thereon in his own name. He could sue only in the name of the assignor. In equity, where such a delivery amounted to an equitable assignment, the assignee could sue in his own name. We shall show that an equitable assignment is made only when the transfer is absolute and unconditional.

"The common law prevails in this jurisdiction where it is applicable to conditions, except where it has been abrogated by statutes." 14 N. M. 293, 91 Pac. 729.

"In all the courts in this state, the common law, as recognized in the United States of America shall be the rule of practice and decision." Cod. 1915, Section 1354.

Now, in this state, John F. Vail, the assignee, if he may sue on the note and mortgage involved in the case at bar, at all, must find his authority so to sue in the statutes of the state.

We have previously, in this brief, argued that the Maxwell Irrigated Land Company was a necessary party, either plaintiff or defendant, to the action. We believe that we may now advance a step by saying that the Maxwell Irrigated Land Company, under the circumstances of this case, is a necessary party plaintiff to the action. Section 589 of the Code.

We have shown that neither the note nor the mortgage were indorsed. Was the mortgage assigned? It certainly was not assigned in the manner provided in Section 589, above quoted. The allegation that the note was assigned is a conclusion of the pleader. The fact stated is that the note was delivered as collateral security. Now, there are only two kinds of assignment. The first passes the legal title. In order that this may be accomplished, the provisions of Section 589 must be fully complied with. That was not done. The second is equitable assignment. Was there an equitable assignment? 5 C. J. 909; Christmas et al v. Gaines, 20 U. S. L. Ed. 762.

From the foregoing citations, it is clearly seen that so long as the person transferring retains any right,

control, or interest in, over, or upon the thing transferred, the transfer does not act as an equitable assignment. Unless the transferee becomes the absolute owner of the whole thing transferred, or at least of a definite part thereof, so that he is entitled to the ownership and control thereof in any and all events, then, there is no equitable assignment.

Now, the pleading in the case at bar shows that the note was pledged as collateral. Colebrooke on Collateral Securities, Section 2, page 2; Section 6, page 7.

Plaintiff says that he is the holder of this promissory note and mortgage. If he is the holder, then he can bring suit in his own name, for section 645 of the Code so provides.

Is the plaintiff the holder of the note and mortgage sued on? We believe not. Section 785, Code of 1915.

The next allegation of the complaint is that plaintiff is the owner of the note. We have shown that mere possession of negotiable paper without endorsement is not proof of ownership. The presumption is to the contrary. Plaintiff's ownership must therefore depend upon the allegation that it was pledged and delivered as collateral security. Neither pledge nor delivery transfers the ownership. There is no allegation of a transfer in the complaint; and delivery is not transfer. Delivery might be to an agent merely. Transfer means the passing of title, either legal or equitable. Words and Phrases, Vol. 8, 7069; Enscoe v. Fletcher, 82 Pac. 1075. Transfer and delivery are, therefore, distinct and distinguishable transactions. 14 Enc. of Pl. & Prac., 518, 519.

Plaintiff's interest was a contingent equitable interest—an interest which could vest only upon the failure of The Maxwell Irrigated Land Company to pay the debt for which the collateral was pledged. His interest in the relief demanded was in seeing that the security was made available at the time plaintiff was

entitled to payment from the Maxwell Irrigated Land Company. It is to be borne in mind, however, that plaintiff did not disclose the extent of such interest as he had; did not even show that the debt for which the collateral was pledged was still owing; did not show that he had a present interest, but only that he had had at some time taken the paper as collateral for some debt the amount of which is not stated.

We believe, however, that plaintiff's contingent equitable interest was sufficient to make him a proper, though not an indispensable party to the action. The interest of The Maxwell Irrigated Land Company, appearing from the complaint and exhibits thereto was such that it was a necessary party plaintiff and could only be admitted as a party plaintiff upon an allegation in the complaint, which does not appear, that it had refused to join in bringing the action; and in that event, it could have been made a party defendant. In no other case would it have been proper to omit that company as a party plaintiff. Section 4073 of the 1915 Code. The propositions for which we are contending are abundantly supported by the authorities. 27 Cyc. 1565; Denby v. Mellgrew, 58 Ala. 147; Johnson v. Hart, 3 Johns Cas. 322 (N. Y.)

We have previously said that where a negotiable instrument is pledged without endorsement the pledgor may maintain an action thereon in his own name. Indeed, the pledgor is the real party in interest. Consolidated National Bank of San Diego v. Hayes, 44 Pac. 469. This case declares that the delivery was no more than a pledge and that the pledgor remained a party in interest.

Now, there can be no question that the pledgor was the holder of the legal title to the note in question at the time this suit was brought. Unless the plaintiff was the holder of an equitable title he could not sue in his own name in any court. Bank of Commerce v. Bogy, 100 Am. Dec. 247.

Do appellants waive demurrer by filing answer?

Appellee's declaration to this effect does not state the
law and the authorities therein cited are not in point
for the reason that such declaration can only apply to
the ommission or misjoinder of proper parties as dis-
tinguished from necessary parties.  Walrath v. County
Commsisioners, 18 N. M. 101, 134 Pac. 204; Miller v.
Klasner, 140 Pac. 1107, 19 N. M. 21.

Brief of appellants in reply to brief of the Max-
well Irrigated Land Company and the Maxwell Ditch
and Reservoir Company on the merits.

The reasons given by the court in the judgment for
denying the appellants the right to dismiss their cross-
complaint do not touch upon or come within the con-
templation of the rule announced by this court in
Andrews v. French, 17 N. M. 615, 131 Pac. 996, for
the reason that the trial court looked into the future
as to what the condition of the parties might in a cer-
tain contingency be, rather than upon the situation of
the parties existing before the court at the time the
dismissal was requested.  We further submit the rea-
sons assigned by the court for failure to permit the dis-
missal are sufficient in themselves to show the error
of the court in the light of the decision in Andrews v.
French, supra, in failing to permit the dismissal.

Crampton, Phillips & Darden, of Raton, for appellees.

The ruling of the court on the demurrer does not
present reversible error for a number of reasons. The
Maxwell Irrigated Land Company was not a necessary
party to the suit.

When the Maxwell Irrigated Land Company assigned
and delivered the note and mortgage to John F. Vail
he became the holder of the full title thereof as between
himself and appellants and had the right to collect
and receive from appellants the full amount due upon
said note.  He also had the right upon payment of
the amount due, to discharge appellants and their
property from all liability.  If any equities existed be-
tween John F. Vail and The Maxwell Irrigated Land

Company that was a matter about which appellants were not concerned. Pomeroy's Code Remedies, 3rd Edition, Section 12; 19 R. C. L. p. 522, Sec. 322 and cases cited; Navajo Stock & Trading Co. v. Gallup State Bank, 26 N. M. 153, 189 Pac. 1108; 21 R. C. L. p. 666.

If the Maxwell Irrigated Land Company had any equity in the proceeds of the mortgage or the mortgaged property at the time of the assignment, then John F. Vail became a trustee pro tanto thereof. Sec. 4070 of the 1915 Code. Chew v. Brumagen, 13 Wall. 497, 20 U. S. L. Ed. 663.

Appellants waive their demurrer by filing an answer after the demurrer was overruled. Territory vs. Baca, 18 N. M. 63, 134 Pac. 212.

Appellants cured the defect in the complaint, if any there was, by making The Maxwell Irrigated Land Company a party to the suit. Chapter 46, Session Laws of 1917; Baca vs. Catron, 24 N. M. 242, 173 Pac. 682. See also: Note to White vs. Johnson, 50 Am. St. Rep. 726, at 738; Note to Patton vs. Marshall, 26 L. R. A. (N. S.) 127, at 130; Southerland's Code Pleading, Section 655.

The ruling on the demurrer having been cured by subsequent pleading, no reversible error is presented. 4 C. J. 925; Patton vs. Pepper Hotel Company, 96 Pac. 296; Harrison County vs. State Savings Bank, 103 N. W. 121. See also: Gill vs. Bickel, 30 S. W. 919, 10 Tex. Civ. App. 67; Cammack vs. Rogers, 74 S. W. 945.

The court committed no error in refusing a trial jury upon the issues raised by the answer to the complaint. A suit to foreclose a mortgage is an equitable action and is triable by the court without a jury. 23 Cyc. 116; Cressens vs. Martin, 145 N. W. 823; Beikirk vs. Boulder National Bank, 127 Pac. 137; Gibbes vs. Hamilton, 71 S. E. 1029; J. I. Case Threshing Machine Co. vs. Copren Bros., 187 Pac. 772; Furse & Lawton vs. Brant, 97 S. E. 840; Avery Manufacturing Co. vs. Smith, 103 N. W. 410; Van Calkenburg vs. Oldham,

108 Pac. 42; Daniels vs. Mutual Benefit Ins. Co., 102 N. W. 458; David Brown vs. John Lawler, 21 Minn. 327; Section 4193, Code of 1915; Clemenson vs. Chandler, 4 Kan. 558; Mass v. Dunmeyer, 96 Pac. 591.

The court did not err in refusing a trial by jury on the counter-claim or cross-Complaint. The proceeding is the same as on the original complaint. The original complaint in this case was in equity and the issues on it were triable by the court. By the great weight of authority the interposition by the defendant in an equitable action of a counter claim of a legal nature gives him no right to a jury trial either of the action generally or of the issues raised by the counter-claim.

**California**—La Societe Francaise d'Epargnes et de Prevoyance Mutuelle v. Selheimer, 57 Cal. 623 (action to foreclose mortgage; counterclaim for deceit); Angus v. Craven, 132 Cal. 691, 64 Pac. 1091 (action to quiet title; counterclaim in ejectment.)

**Colorado**—Neikirk v. Boulder Nat'l Bank, 53 Colo. 350, 127 Pac. 137 (action to foreclose mortgage; counterclaim for damages).

**Indiana**—Reichert v. Krass, 13 Ind. App. 348, 40 N. E. 706, 41 N. E. 835 (action to foreclose mechanics' lien; counterclaim for damages); Whitcomb v. Stringer, 63 N. E. 582 (set-off by receiver against petition of creditor in receivership proceeding).

**Iowa**—Ryman v. Lynch, 76 Ia. 587, 41 N. W. 320 (action to foreclose mortgage; counterclaim for slander); Gatch v. Garretson, 100 Ia. 252, 69 N. W. 550 (action to foreclose lien; counterclaim for damages).

**Kansas**—Larkin v. Wilson, 28 Kan. 513 (action to quiet title; counterclaim in nature of ejectment).

**Louisiana**—See Pool v. Alexander, 26 La. Ann. 669.

**Minnesota**—Summer v. Jones, 27 Minn. 312, 7 N. W. 265 (action to enforce mechanic's lien; counterclaim for overpayment;) Johnson v. Peterson, 90 Minn.

503 (action to determine adverse claim to real property; counterclaim in ejectment).

**Nebraska**—Doble v. Omaha Foundry & M. Co. 15 Neb. 436, 19 N. W. 644 (action to foreclose mechanic's lien; counterclaim for loss from delay in furnishing material); Morrissey v. Broomal, 37 Neb. 766, 56 N. W. 383 (action to forclose lien of warehouse receipts; counterclaim for damages). Compare Larrabee v. Given, 65 Neb. 701, 91 N. W. 504 (action for injunction; counterclaim for damages for fraud.)

**Ohio**—Salladay v. Webb, 1 Ohio Cir. Dec. 638, 2 Ohio Cir. Ct. 553 (action to foreclose mortgage; counterclaim for deceit.)

**South Carolina**—McLaurin v. Hodges, 43 S. C. 187, 20 S. E. 991 (action to foreclose mortgage; counter claim for usury); Sullivan Hardware Co. v. Washington, 47 S. C. 187, 25 S. E. 45 (action to foreclose chattel mortgage; counterclaim for breach of warranty: Pratt v. Timmerman, 69 S. C. 186. 48 S. E. 255 (action to foreclose lien; counterclaim for fraud.)

**Washington**—Installment Bldg. & Loan Co. v. Wentworth, 1 Wash. 467, 25 Pac. 298 (action to foreclose mechanic's lien; counterclaim for damages for failure to complete contract.)

**Wisconsin**—See Wilson v. Johnson, 74 Wis. 337, 43 N. W. 148, (action to enforce lien on pledge; counterclaim for loss of use of chattel while in plaintiff's possession).

See also Note to Johnson Service Company vs. Kruse, Ann. Cas. 1914C, Page 850.

In this state there is no special statute conferring the right to trial by jury in cases of this kind but the statute is that the same proceedings may be had as on the original complaint. For a definition of the word "proceedings" see Vol. 6 (old series) Words and Phrases, page 5633. Appellants were, therefore, not entitled to a trial by jury.

The refusal by the trial court to permit a dismis-

sal of the counter-claim or cross-complaint and in hearing evidence with reference thereto does not present reversible error.

All of the parties to the counter-claim or cross-complaint were jointly interested in appellant's motion to dismiss the counter-claim or cross-complaint, and are necessary parties to a review of the ruling thereon.

The record presents no question for review against The Maxwell Irrigated Land Company and The Maxwell Ditch and Reservoir Company. Sec. 37, Chap. 43, Session Laws of 1917; Garcia v. Silva, 193 Pac. 498.

The ruling on the motion to dismiss affected the three appellees jointly, and, the two companies not being parties to the bill of Exceptions, this court cannot review the ruling on the motion to dismiss. Collins Mfg. Co. vs. Seeds Dryplate Co. et al., 75 N. W. 1099; Falk vs. Kansas City W. & N. W. R. Co., et al, 62 Pac. 430; U. S. Leather Co. vs. First Nat'l Bank of Gainesville, 33 S. E. 31. See also: Frazier vs. Weiman, 120 S. W. 904; Dodson vs. Fletcher, 78 Fed. 214; Kauhn vs. American Mutual Life Ins. Co., 66 N. E. 890; Harrison vs. O'Calla Bldg. & Loan Assoc., 42 So. 696; Kolp vs. Parsons, 150 Pac. 1043; Century Digest, Appeal and Error, Secs. 1795, 1814, 1911, 1921.

The trial court did not abuse its discretion in overruling appellant's motion to dismiss the counter-claim or cross-complaint.    Andrews v. French, 17 N. M. 615, 131 Pac. 996; Leach v. Dolese, 186 Mich. 695, 153 N. W. 47; Inman v. Hodges, 80 S. C. 455; 61 S. E. 958; Horton v. State ex rel Hayden, 88 N. W. 146; Barnes v. Noel, 174 S. W. 276.    There is no fixed rule as to what, if fact, amounts to prejudice to the opposite party.    Numerous illustrations are found in the notes to 18 Corpus Juris, page 1158, Section 31.    See also: City of Detroit v. Detroit City Railway Co., 55 Fed. 569; Pyrene Manufacturing Co. v. Castle, 240 Fed. 841; Pullman Palace Car Co., v. Central Transportation Co., 43 U. S. L. Ed. 108; Puffer v. Welch, 129 N. W. 525.

### OPINION OF THE COURT.

BOTTS, J.   Hettie Campbell and her husband executed and delivered to the Maxwell Irrigated Land Company their promissory note, together with a real estate mortgage to secure the payment thereof. This mortgage seems to have been subject to a first mortgage on the same premises.   The Campbells sold the mortgaged premises to the appellants Young and Ferguson.   The mortgage provided that in case of failure to pay taxes, interest, or other charges, the mortgagee might treat the whole of said indebtedness as due. The plaintiff, John F. Vail, thereafter filed his suit to foreclose, making the Campbells and their grantees parties defendant, alleging the foregoing facts and the default in the payment of taxes, interest, and other charges, and "that, after the execution and delivery of said second mortgage note and second mortgage deed, and before the maturity of said second mortgage note, the said Maxwell Irrigated Land Company, for value received and as collateral security, indorsed, assigned, pledged, and delivered said second mortgage note and second mortgage to the plaintiff herein and that said plaintiff is now holder and owner thereof." The Campbells were served only by publication and did not appear in the suit.

The defendants Young and Ferguson demurred to the complaint on the grounds:   (1) That the complaint does not state facts sufficient to constitute a cause of action, for the reason that it does not show the indorsement of the note to the plaintiff; and (2) that there is a defect of parties to said action, in that the Maxwell Irrigated Land Company, the payee, is not either a party plaintiff or a party defendant, though the complaint shows on its face that the plaintiff, Vail, holds said note and mortgage as pledgee thereof for collateral security, and that the complaint shows on its face that said Maxwell Irrigated Land Company is a necessary party to a completed determination of the action.   This demurrer was overruled.

Said defendants then filed their answer and a cross-

complaint. By their answer they admitted the execution of both note and mortgage, but denied that there was any indebtedness due the plaintiff on account of said note. By their cross-complaint they brought into the action, as new parties, the Maxwell Irrigated Land Company, payee, and another corporation not necessary to be considered, and after notice said new parties appeared in said action, through the same attorneys as those representing the plaintiff, and filed replies to the cross-complaint, as did also the plaintiff, Vail, named also as a cross-defendant. By their cross-complaint said defendants alleged failure of consideration and damages. They also alleged notice to the plaintiff of the facts so alleged at the time of the transfer of the note and mortgage in suit by the payee to the plaintiff. The material allegations of the cross-complaint were denied by the plaintiff and by the new parties.

The issues being made up, said defendants, on the call of the docket, demanded a jury trial, which the court denied. Some months thereafter, the case having been called for trial, said defendants demanded, first, a jury trial upon the issues raised by plaintiff's complaint and the answer thereto, and, second, a jury trial upon the issues raised by the cross-complaint filed by said defendants and the replies thereto, and offered to pay such jury fees as should be required by the court. They then separately demanded a trial by jury upon the issues raised by the cross-complaint, and offered to pay such jury fees as the court should require, which demand was also overruled. Said defendants then moved the dismissal of their cross-complaint, whereupon objection thereto was made by plaintiff and cross-defendants, in substance, that said defendants had known since the previous ruling of the court, that they would not be granted a jury trial, and that the plaintiff and cross-defendants had expended a large sum of money in the preparation of the case for trial at that time, and had brought witnesses from the state of Colorado who were material in the trial of the issues raised by the cross-complaint,

for none of whom plaintiff or cross-defendants could claim witness' fee beyond the state line; that the situation of the parties was the same as though said defendants had filed their complaint and the plaintiff, Vail, had filed the substance of his complaint as a counterclaim thereto, so that said defendants had no right to dismiss without the consent of the plaintiff; that the dismissal of the cross-complaint at that time would prejudice the plaintiff, Vail, and the other cross-defendants, in that they had no assurance that they would be able to produce their witnesses from outside the state at a later trial, and had no right by compulsory process to bring them within the jurisdiction of the court. Plaintiff and cross-defendants then offered to prove the facts stated in their objections to a dismissal of the cross-complaint, which the court permitted them to do.

The court found that plaintiff and cross-defendants had procured the attendance of a number of non-resident material witnesses at great expense, and also had obtained and had in court a considerable amount of documentary evidence which is regularly kept outside of the state of New Mexico, and that the defendants, having known for a long time that the court would deny, and had already denied to them, a jury trial, and having known for 20 days prior to the date of trial that said cause would then come on regularly to be heard before the court without a jury, carelessly and without due regard to the rights or equities of plaintiff and cross-defendants, failed or omitted to dismiss or give notice that they intended to dismiss or to ask for the dismissal of their cross-complaint, and permitted said plaintiff and cross-defendants to prepare and be ready for trial at that time upon the issues made upon the cross-complaint and pleadings filed in reply thereto, and that the plaintiff and other cross-defendants would be materially prejudiced in the making of their defense to said cross-complaint if suit should thereafter be brought thereon. The court thereupon denied the motion to dismiss. The defendants elected to stand upon their demurrer and motions, and

to proceed no further in the trial. The court then heard the evidence in support of the complaint and entered a decree for the foreclosure of the mortgage, as well as against said defendants on their cross-complaint. From that decree, the defendants Young and Ferguson have appealed to this court.

[1] The first point made by appellants is that the court erred in overruling their demurrer. The copy of the note set out in the complaint does not show any indorsement by the payee, and appellants' argument on this point is based upon the proposition that the note in suit is in the possession of the plaintiff as a pledge for the security of other indebtedness, without indorsement, and the amount of the indebtedness secured and the interest of the plaintiff therein are not alleged. They say (1) that the plaintiff was not authorized to bring the suit without joining the payee, the Maxwell Irrigated Land Company, and (2) if permitted to sue in his own name, the plaintiff would be entitled to recover only to the extent of the indebtedness secured, and the original payee would be entitled to the residue, if any, and therefore should be made a party, and (3) by reason of the absence of the payee as a party to the suit appellants are precluded from defending on the ground of failure of consideration, and are unprotected from the risk of a subsequent suit by the payee. The plaintiff contends, first, that his complaint is not defective in the particulars assigned, and, second, that even if it could be held defective, such defects were cured by the subsequent filing of the cross-complaint by appellants, wherein they made the payee of the note a party.

The appellants say that the alleged defect was not cured by the appearance of the cross-defendant, for the reason that the latter was never a party to the foreclosure action, but a party only to the action, instituted by the filing of the cross-complaint, and, in this connection, maintain that the two actions were in effect separate and distinct, a suit beside a suit rather

than a suit within a suit. Our statute (chapter 46, Laws of 1917), authorizing cross-complaints, is as follows:

"Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-complaint. New parties material to the cause may be brought in by the cross-complaint upon summons issued and served as provided in other cases. The cross-complaint must be served upon the parties affected thereby and on the filing of a cross-complaint the same proceedings may be had as on the original complaint."

It is argued that where the statute refers to "new parties material to the cause," the "cause" referred to is that set out in the cross-complaint and not the one covered by the original complaint. In this we think appellants have fallen into error. The practice under the Codes permitting cross-complaints is taken from the equity practice, and it was always the rule in equity that, as our statute provides, the matters set up by cross-bill must relate to, or be connected with, the matter set up in the original bill. In other words, the original bill and the cross-bill constitute but one suit. In the case of Ayres v. Carver, 17 How. 591, 15. L. Ed. 179, the Supreme Court of the United States said:

"A cross-bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts, in aid of the defense to the original bill, or to obtain full and complete relief to all parties, as to the matters charged in the original bill.

"It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original, independent suit. The cross-bill is auxiliary to the proceeding in the original suit, and a dependency upon it.

"It is said by Lord Hardwicke that both the original and cross-bill constitute but one suit, so intimately are they connected together. Field v. Schieffelin, 7 J. Ch. R. 252."

This rule has been adopted by the states having statutory provisions similar to ours relating to cross-complaints. Clark v. Taylor, 91 Cal. 552, 27 Pac. 860; Silver Creek & Panoche Land & Water Co. v. Hayes et al., 113 Cal. 142, 45 Pac. 191; City of Eureka v. Gates, 120 Cal. 54, 52 Pac. 125; Stockton Savings & Loan Soc. v. Harrold et al., 127 Cal. 612, 60 Pac. 165; Hill v. Frink, 11 Wash. 562, 40 Pac. 128; Sutherland on Code Pleading, §656; Beach, Mod. Eq. Pr. §446.

[2] Appellants argue that to give the statute a construction different from that contended for by them would be to permit the litigants to control the question of parties in defiance of the court, in that, when a demurrer for defect of parties has been overruled, as was done in this case, the litigants, by cross-complaint, could, notwithstanding such ruling, bring in the parties contended for as proper or necessary. This does not follow. It might often be that it would not appear from the face of the complaint that a new party is necessary, so that the court might properly overrule a demurrer based upon a defect of parties, but other facts might appear by a cross-complaint which show the necessity of bringing in the new parties. Most assuredly, if there was not such showing, under the statute the court should order the dismissal of the cross-complaint or the new parties attempted to be brought in, if they have no interest in the subject-matter of the original suit. A cross-complaint is not permissible under the statute except it be connected with, or dependent upon, the subject-matter of the original complaint, and a new party cannot be brought in unless his presence be necessary or proper to a complete determination of the plaintiff's suit. Johnson v. Cullinan (Okl.) 221 Pac. 732.

While appellants demurred on the ground that the complaint fails to state facts sufficient to constitute a cause of action, as well as on the ground of defect of parties, as we understand their argument, the former ground of demurrer is dependent upon the latter; that is to say, the complaint fails to state facts sufficient to

constitute a cause of action, because the Maxwell Irrigated Land Company, later made cross-defendant, is not a party to the action, so that its rights in the pledged note and mortgage, if any it had, might be adjudicated. They say:

"The declarations of the complaint are wholly insufficient to show Vail's right to maintain the suit against these defendants without making the Maxwell Irrigated Land Company a party to the suit; and they are insufficient against the demurrer because they show nothing of the interest of Vail in the mortgage debt which is sufficient to enable the court to make a decree as to the disposition of the fund realized from sale, in case of plaintiff's success in the suit."

If the Maxwell Irrigated Land Company later became a party to the foreclosure suit, therefore, so that its interest in the mortgage debt, if any it claimed, was or might have been adjudicated, the alleged defect in the complaint for failure to state a cause of action, as well as the defect of parties, would be cured. Cohen v. Knox, 90 Cal. 266, 27 Pac. 215, 13 L. R. A. 711; Patten v. Pepper Hotel Co., 153 Cal. 460, 96 Pac. 296; section 470, Pom. Code Rem. (4th Ed.).

[3] Under the equity practice, there was a difference of opinion on the question of whether a new party could be brought into a suit by cross-bill; the Supreme Court of the United States and a number of other courts holding that such practice was not permitted, while some courts hold to the contrary. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Hurd v. Case, 32 Ill. 45, 83 Am. Dec. 249, 253, note. Our statute and those of other states like or similar to ours were doubtless enacted for the purpose of settling this disputed question and insuring to a defendant the right to have before the court all parties necessary to an adjudication of the subject-matter of plaintiff's suit. Under the United States equity practice and that of the states following it, where a new party is not permitted to be brought in by a cross-bill, all parties to the cross-bill are necessarily parties to the original action and, of course, are bound by the de-

cree adjudicating the entire matter. Where one not a party to the original action, however, is made a defendant to the cross-complaint only, the question arises as to whether or not he becomes also a party to the original action, so as to be bound by the final adjudication of the whole matter.

The reason assigned by appellants for their contention that the complaint is insufficient in the particulars assigned is that a complete decree could not be made which would protect the mortgagors and the purchasers of the mortgaged premises from any claims which the Maxwell Irrigated Land Company, as assignor of the note, might subsequently make. If such assignor is bound by the decree which was entered, the assigned reason underlying appellants' contention would no longer be present. The question as to whether or not the cross-defendant, assignor, is so bound is not without difficulty.

While it does not appear from the record that such cross-defendant was ever served with a copy of the complaint, service of a copy of the cross-complaint being all that is disclosed, it might seem at first glance that it would not be bound by any part of the judgment except that adjudicating the issues raised by the cross-complaint and the answer thereto. What the situation would have been in this respect had the cross-defendant defaulted we need not decide, but, having seen that the matters covered by the cross-complaint could not be the subject-matter of a new and independent suit, but that they must be in and constitute a part of the main suit embraced within the original complaint, when the cross-defendant appeared, it appeared, not in a new suit, but in the suit instituted by the plaintiff. Having so appeared, it became a party to the suit to foreclose the mortgage, and, being a party, is bound by the judgment as to all matters which were, or might have been, litgiated therein (Lockhart v. Leeds, 12 N. M. 156, 76 Pac. 312; Board of Commissioners v. Cross, 12 N. M. 72, 73 Pac. 615; Territory v. Santa Fe Pac. R. Co., 10 N. M. 410, 62 Pac.

985) ; and this would include the matters covered both by the complaint and by the cross-complaint.

If said cross-defendant, therefore, had or claimed any rights in the pledged note and mortgage or the proceeds thereof, the suit being for the collection of the whole, by failure to assert such claims adversely to the plaintiff the cross-defendant would be barred from a subsequent assertion of such rights, and the defendants, cross-complainants, are fully protected from the risk under which they felt themselves laboring at the time they objected to the sufficinecy of the complaint. Desnoyers v. Dennison, 10 O. C. D. 430; Swope v. Schwartz (Ky.) 15 S. W. 251; Black on Judgments, § 541. See, also, Robbins v. Chicago City, 4 Wall. 657, 18 L. Ed. 427.

So far as the objection is concerned that the complaint did not give the appellants an oppertunity to litigate the question of failure of consideration, it seems plain that such objection is no longer present, inasmuch as the appellants brought in the party against whom they claim the right to so defend and fully litigated, or had the opportunity to so litigate with it that issue which was decided adversely to the appellants. If they had a right to litigate that question in this suit, as they claimed as a ground for the objection to the complaint for the absence of the original payee, that right has been fully accorded them to the same extent as though such payee had been made an original party.

It becomes of no importance, therefore, to determine whether or not the complaint was defective in the particulars assigned by the appellants, since, if such defects did exist, they have been fully cured.

Appellants complain that they have been deprived of their constitutional right to a jury trial. They argue that they were entitled to a jury for the trial of the issues (1) raised by the complaint and the answer thereto, and (2) by the cross-complaint and the answer thereto, and by the cross-complaint and the

answers or replies thereto. There is no question but that their demands for a jury were in all things kept good, so that the point to be decided here is one of substance.

The right to jury trial in this state is dependent on section 12 of article 2 of the Constitution, which provides:

"The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."

"As it has heretofore existed," of course, refers to the right as it existed in the territory of New Mexico at the time immediately preceding the adoption of the Constitution.

It will not be disputed that, prior to the adoption of the Code, a suit to foreclose a mortgage was a suit in equity, or that a litigant is not entitled, as a matter of right, to a jury in an equity suit; but, in order to pass upon the questions here presented, it becomes necessary to determine whether or not the rule has been changed by the adoption of the Code of Civil Procedure, which was long prior to the adoption of the Constitution. Section 4067 of the Code, as it appears in the 1915 codification, provides that:

"There shall be in this state but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action, and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant."

Appellants insist that under the Code there is no such thing as a suit in equity, or an action at law in this state, but only a civil action wherein may be united both legal and equitable causes of action as formerly designated.

Section 4105 of the Code authorizes the plaintiff to unite in the same complaint certain several causes of action, whether they be such as have been heretofore

denominated legal or equitable, or both; and section 4116 of the Code authorizes the defendant to set forth, by answer, as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both.

While it is true that the Code, in so far as it has reference to the outward form and course of proceeding in civil actions, has abolished the distinction between actions at law and suits in equity, yet the principles by which the rights of the parties are to be determined have not been changed. No attempt was made by the legislature to substitute new primary rights, duties, or liabilities for those embodied in either department of the municipal law, and the Code does not assume to abolish distinctions between law and equity considered as two complementary departments of the system of jurisprudence developed in and derived from the mother country. The Code makes it no longer necessary to give consideration to the various forms and external distinctions which previously were so necessary to be observed by a litigant in getting his cause of action, whether at law or in equity, before a tribunal for adjudication, and enables him to secure a hearing upon a simple and concise statement of the facts to be relied upon, regardless of the nature of the rights sought to be protected or enforced; but once before the tribunal, the adjudication of those rights depends upon the same principles of law or equity upon which they depended prior to the adoption of the Code, so that, if his cause of action is one which was previously cognizable only in a court of law, he still, since the adoption of the Code, finds the tribunal to which he has applied for relief a court of law and governed and controlled by legal principles and adjudicating legal rights, duties and liabilities; and if his cause of action be one which previously was cognizable only in a court of equity, he still, since the adoption of the Code, finds his tribunal sitting as a chancellor, governed and controlled by principles of equity and adjudicating equitable rights, duties, and liabilities.

This seems to be the uniform construction by the courts of the several states, and especially those three states to which the bench and bar of New Mexico have been accustomed to look for assistance in the construction of our Code of Civil Procedure. The Supreme Court of New York in the case of Cole v. Reynolds, 18 N. Y. 74, said:

"By the Code, the distinction between actions at law and suits in equity is abolished. The course of proceeding in both classes of cases is now the same. Whether the action depend upon legal principles or equitable, it is still a civil action, to be commenced and prosecuted without reference to this distinction.

"But, while this is so in reference to the form and course of proceeding in the action, the principles, by which the rights of the parties are to be determined, remain unchanged. The Code has given no new cause of action. In some cases parties are allowed to maintain an action who could not have maintained it before, but in no case can such an action be maintained where no action at all could have been maintained before upon the same state of facts. If, under the former system, a given state of facts would have entitled a party to a decree in equity in his favor, the same state of facts now, in an action prosecuted in the manner prescribed by the Code, will entitle him to a judgment to the same effect. If the facts are such as that, at the common law, the party would have been entitled to judgment, he will, by proceeding as the Code requires, obtain the same judgment. The question, therefore, is whether, in the case now under consideration, the facts. as they are assumed to be, would, before the adoption of the Code, have sustained an action at law or a suit in equity."

See, also, Peck v. Newton, 46 Barb. (N. Y.) 173, and Lattin v. McCarty, 41 N. Y. 107.

In the case of Magwire v. Tyler, 47 Mo. 115, the Supreme Court of Missouri used the following language:

"In providing that there shall be but one form of civil action, the Legislature cannot be supposed to have intended at one stroke or sweeping enactment to abolish the well-recognized and long-established distinction between law and equity. Such a construction would lead to perplexities and difficulties, infinite and endless in their character. The innovation extends only to the form of action in the pleadings. While the difference in form and the technicalities in pleadings have been dispensed with, and the party need only state

his cause of action in ordinary and concise language, whether is be under assumpsit, trover, trespass, or ejectment, without regard to the ancient forms; still the distinction between these actions has not been destroyed, but remains the same.   So cases legal and equitable have not been consolidated, although there is no difference between the form of the bill in chancery and the common-law declaration under our system, where all relief is sought in the same way from the same tribunal.   The distinction between law and equity is as naked and as broad as ever.   To entitle the plaintiff to an equitable interposition of the court, he must show a proper case for the interference of a court of chancery, and one in which he has no adequate or complete relief at law.   The judgment vesting him with the legal title shows that he has a complete, appropriate, and ample remedy at law by ejectment.   These plain principles were entirely overlooked at the trial in the court of common pleas, but, as before remarked, according to the decision of the majority of the court, the case was instituted and tried upon a misapprehension.''

See, also, Richardson v. Means, 22 Mo. 495; Henderson v. Dickey, 50 Mo. 161; Bliss v. Prichard, 67 Mo. 181; McKee v. Allen, 204 Mo. 655, 103 S. W. 76.

In the case of De Witt v. Hayes, 2 Cal. 463, 56 Am. Dec. 352, the Supreme Court of that state said:

''The Legislature, in providing that 'there shall be but one form of civil action,' cannot be supposed to have intended, at one fell stroke, to abolish all distinction between law and equity, as to actions.   Such a construction would lead to infinite perplexities and endless difficulties.   The innovation extends only to the form of action and the pleadings, while the technicalities of pleading have been dispensed with; and the plaintiff need only state his cause of action in ordinary and concise language, whether it be in assumpsit, trespass, or ejectment, without regard to the ancient forms; still the distinction between those actions has not been abolished, but remains the same.   So cases legal and equitable have not been consolidated; and though there is no difference between the form of a bill in chancery, and a common-law declaration, under our system, where all relief is sought in the same way from the same tribunal, the distinction between law and equity is as naked and broad as ever.   To entitle the plaintiff to the equitable interposition of the court, he must show a proper case for the interference of a court of chancery, and one in which he has no adequate or complete relief at law.''

See also, Smith v. Rowe, 4 Cal. 6; Spect v. Spect 88 Cal. 437, 26 Pac. 203, 13 L. R. A. 137, 22 Am. St. Rep. 314; Pomeroy's Code Remedies, §§8 and 9; Suth-

erland on Code Pleading, §87; Matlock v. Todd, 25 Ind. 128; Emmons v. Kiger, 23 Ind. 483; Klonne v. Brad-street, 7 Ohio St. 323; R. & L. Turnpike, etc., Co. v. Rogers, 7 Bush (Ky.) 532; Claussen v. Lafrenz, 4 G. Greene (Iowa) 224; Bonesteel v. Bonesteel, 28 Wis. 245; Draper v. Brown, 115 Wis. 361, 91 N. W. 1001; Anderson v. War Eagle, etc., Mining Co., 8 Idaho, 789, 72 Pac. 671; Olson v. Thompson, 6 Okla. 74, 48 Pac. 184.

So, in this case, the plaintiff sought the aid of a court of equity for the foreclosure of his mortgage, and, in the adjudication of the rights and liabilities involved therein, the court was sitting as a chancellor, with the same powers, and governed by the same principles, excepting only as to the method and manner of getting before the court, as though the Code had never been adopted.

[4] The first argument that the appellants were entitled to a jury trial of the issues made by the complaint and answer is based on the proposition that the only allegations of the complaint which are denied are those of indebtedness, the right to foreclose if such indebtedness existed being conceded, that the issue of indebtedness is one cognizable solely in a court of law, and that the defendants, therefore, should have been granted a jury trial as a matter of right; but counsel overlooks the fact that the existence of a present indebtedness on the part of the defendants is the very foundation of the right to foreclose, the existence and ownership of the mortgage itself, in the absence of indebtedness, giving rise to no such right. Before awarding a foreclosure, it was an absolute necessity for the court, sitting as a chancellor, to determine whether or not the defendants were indebted to the plaintiff, and, if so, to what extent, as a basis for the decree and for the application of the proceeds of the sale to be made thereunder.

In the case of Chesney v. Chesney, 33 Utah, 503,

at page 512, 94 Pac. 989, at 993 (14 Ann. Cas. 835) the Supreme Court of Utah said:

"Without a valid debt there could be no valid mortgage, regardless of the solemnity of its execution or the form thereof. In an action to foreclose a mortgage given to secure a debt or obligation, it must be made to appear by proper averments that there is an existing obligation to pay, precisely the same as though the action were instituted to obtain a personal judgment merely. Where there is no right to a personal judgment in case the mortgage is given as security for the payment of money only, there can be no right to foreclose or subject the property to the payment of the alleged debt or obligation until the right to a judgment in law is made to appear from the complaint."

In the case of Carmichael v. Adams, 91 Ind. 526, the question was on the right to a jury trial in a suit on a note and to foreclose a mortgage. The Supreme Court of Indiana said:

"The court, having acquired jurisdiction of the present case as a suit in equity to foreclose a mortgage, was not bound to dissect the suit into separate members, and try each separately, one member as a matter of law, and the other as a matter of equity, but had a right to treat the case as a unity, and as one of exclusive equitable jurisdiction.

"There could, in such a case as this—a suit upon a note and mortgage—be no decree without an ascertainment of the amount due on the note, and, therefore, the whole matter was necessarily for the decision of the court. In order to determine whether the plaintiff was entitled to the relief sought, it was absolutely necessary to ascertain that there was a debt secured by the mortgage, for, if there was no debt, there was nothing upon which the power of the court could be exercised. It was not possible to make a step of progress in the decree without settling the question of the defendants' indebtedness.

"Where questions are so closely blended and so firmly interlaced as in a suit upon a note and mortgage, there can be no severance and no separate trials. One trial, or, to speak more accurately, one hearing, ends the whole controversy.

"It would lead to confusion and injustice to direct separate trials in such cases. Should a jury find there was no right to recover on the note, and the court adjudge that there was a right to recover on the mortgage, there would then be a conflict not easily overcome. To be sure, the court might set aside the verdict and grant a new trial, but this, after all, would leave the control with the court, and it might just as well be there in the first instance. If, however, it be said

that the court may not disturb the verdict, then we should have two conflicting decisions in one case upon the question of the defendant's indebtedness, and in that event no final result could ever be reached.

"We know of no case where it can be necessary to go through two trials before different tribunals, one the jury and the other the court, to end one suit, reach one result, and secure one decree. We are not willing to create such a case. "The court below did not err in refusing to give a trial by jury and a hearing by the court."

See, also, Bank of Key West v. Navarro, 22 Fla. 474; Nye v. Gribble, 70 Tex. 458, 8 S. W. 608; Travellers' Ins. Co. v. Patten et al., 98 Ind. 209; Wernwag v. Brown, 3 Blackf. (Ind.) 457, 26 Am. Dec. 433; Tompkins v. Wiltberger, 56 Ill. 385; Vermont Loan & Trust Co. v. McGregor et al., 5 Idaho, 510, 51 Pac. 104; Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313.

The issue of indebtedness was not, therefore, one cognizant only in a court of law, but was an issue lying across the very threshold of the chancellor's jurisdiction to decree a foreclosure, even under the original equity practice, and the parties were not entitled to a jury for the trial thereof.

[5] It is next argued that defendants were entitled to a jury trial because the plaintiffs sought a personal judgment for any deficiency that might remain unpaid after the application of the proceeds of the mortgage foreclosure. At the threshold of their argument, they present to us an almost unanimous expression by text-writers to the effect that in foreclosure proceedings, unless authorized by statute or rule of court, a court of equity is without jurisdiction to render a personal judgment for a deficiency. As a fair example of the statement of the rule by text-writers, we quote 27 Cyc. at 1751, as follows:

"Under the original equity practice, unmodified by any statute or authorized rule of court, a proceeding to foreclose a mortgage was strictly in rem, and consequently the court had no authority to render a personal judgment against the mortgagor or any other defendant, either for the whole debt

or for the deficiency; plaintiff being obliged, in case of such deficiency, to pursue his remedy by a separate action at law."

Our experience at the bar convinces us that the practice of the courts in this state has been to render judgment for deficiency in foreclosure cases, and this fact has prompted us to make a careful analysis of the authorities cited in support of the foregoing text. We have examined all the cases cited except one from Ohio, which we have been unable to find. We shall discuss them in the order of their decision rather than in the order of their citation.

The earliest case cited is that of Pool v. Young, 7 T. B. Mon. (Ky.) 587, decided in 1828. No authority whatever was cited by the court in that case, but in the other Kentucky case cited (McGee v. Davie, 4 J. J. Marsh, 70, decided in 1830), the court cited and relied on the case of Downing v. Palmateer, 1 T. B. Mon. 64, which was decided prior to either of the cited cases. An examination of the latter discloses that the Kentucky court had the question squarely before it and squarely decided it in accordance with the rule announced by the New York case of Dunkley v. Van Buren, 3 Johns. Ch. 330, which is cited as the sole authority. It is apparent, therefore, that the Kentucky rule is based solely on the Dunkley Case, which held that, in a suit to foreclose a mortgage, the mortgagee was confined strictly to the property pledged, and denied the right of a court of equity to render a deficiency judgment. This rule was followed by the Kentucky courts at least until 1831 (Crutchfield v. Coke, 6 J. J. Marsh, 89), but was later changed by statute authorizing a personal judgment for deficiency in foreclosure actions. Julian v. Pilcher, 2 Duv. (Ky.) 254.

The Alabama case cited in support of the text is Hunt v. Lewin, 4 Stew. & P. 138, decided in 1833, which, in so far as it discusses the jurisdiction of a court of equity to render a deficiency judgment, relies on the Dunkley Case and the authorities cited thereby. The decree appealed from was not a decree of

sale but a strict foreclosure. It was contended that the mortgaged property should have been sold in part payment, leaving the balance thus · established to be recovered by execution or other proceeding in personam; but it appears that there was no separate bond or note or other written evidence of the contract for payment, and the mortgage itself contained no express covenant for payment. The court said:

"It is not pretended that this mortgage contains any express covenant, for the payment of the money; if it did, as will be presently shown, it could only constitute a ground of action, at law."

The court then proceeded to recite the holding of the Dunkley Case and the authorities cited thereby, and said that the doctrine of these several cases seems to be that, if the mortgaged property proves insufficient to pay the debt, chancery can only act in rem on a bill to foreclose; that the remainder of the debt can only be recovered by suit at law, and to authorize this there must be either an express covenant in the mortgage deed, for payment of the debt, or a separate bond or note given, or other evidence of an express promise to pay it.

Since the case was one where there was no covenant or agreement for the payment of the money, all discussion by the court of the jurisdiction of a court of equity to decree a personal judgment for deficiency in a case where there was such covenant or agreement is pure dictum. That the Alabama court afterwards must have believed there had been no authoritative adjudication of the question is indicated by subsequent opinions. Four years afterwards the court cited the Dunkley Case in Haley v. Bennett, 5 Port. (Ala.) 452, in support of the dictum that a deficiency judgment is not warranted by equity practice, expressly saying, however, that such question was not then before the court; and in the case of Tedder v. Steele, 70 Ala. 347, decided in 1881, five years after the enactment of a statute authorizing the entry of deficiency

judgments, where, in deciding the right to a deficiency judgment under the statute, the court said:

"It may be conceded that, apart from the power conferred by special statutory provisions, suits for the foreclosure of mortgages, and for the enforcement of vendors' liens, are not intended to act in personam, so as to authorize courts of equity to render personal decrees against defendants, for any deficiency found due by a given day"—citing the Dunkley case.

The next case cited in order of time is Fleming v. Sitton, 21 N. C. 621, decided in 1837, wherein the court relies on the previous North Carolina case of Gillis v. Martin, 17 N. C. 470, 25 Am. Dec. 729, and the New York case of Lansing v. Goelet, 9 Cow. (N. Y.) 346. The Gillis Case was a bill to redeem, and the proposition under consideration was in no wise involved. The Lansing Case was likewise a bill to redeem, and cannot be considered as an authority on this proposition, unless it be by reason of its citing the Dunkley Case; so that the North Carolina rule must also rest on the Dunkley Case, if it rests on any authority whatsoever.

The Mississippi case cited is Cobb v. Duke, 36 Miss. 60, 72 Am. Dec. 157, decided in 1858. That case squarely decided that a court of equity in a foreclosure suit has no jurisdiction to render a deficiency judgment basing its decision on the sole authority of Stark v. Mercer, 3 How. (Miss.) 377, decided in 1839, which announces the same rule, basing its decision on the Dunkley Case. The court refused to adopt the rule that chancery, having obtained jurisdiction for one purpose, will retain it for all. After the decision of the Cobb Case, the rule was changed by statute permitting deficiency decrees. Weir v. Field, 67 Miss. 292, 7 South. 355.

In the case of Johnson v. Shepard, 35 Mich. 115, the question was whether or not defendants, who had merely guaranteed the payment of a note secured by a mortgage, could be held in the foreclosure suit for the payment of a deficiency. The decision was:

"Until not only a decree had been obtained, but it had also

failed to produce payment, either out of the land or out of the other property of Shepard [the mortgagor], they were not liable to be called upon for payment."

In the discussion, the court paused to remark that under the original equitable jurisdiction there was no power to make a personal decree even against the mortgagor, citing the Dunkley Case as authority. The statement was pure dictum, since the case was decided on a Michigan statute adopted from New York more than 40 years prior to the date of the decision. No other Michigan case is cited, but in Culver v. Judge of the Superior Court, 57 Mich. 25, 23 N. W. 469, the court says that the Michigan statute came from New York, and again pauses to remark that before the adoption of this statute no decree for a deficiency could be rendered in a foreclosure suit, citing the Dunkley Case as sole authority therefor.

Similar dicta again supported by the Dunkley Case appeared in the later cases of Winsor v. Ludington, 77 Mich. 215, 43 N. W. 866, and Prentis v. Richardson's Estate, 118 Mich. 259, 76 N. W. 381. In no Michigan case which we have been able to find was the question of the chancellor's jurisdiction, in the absence of statute or rule of court, to render judgment for a deficiency squarely presented.

In the Maryland case of Worthington v. Lee, 2 Bland. 678, the question before the court was whether or not certain heirs of the mortgagor were proper parties to a foreclosure suit, the question having been raised by demurrer. The court overruled the demurrers and held that there must be an accounting to ascertain the exact amount of the mortgage debt, before a sale could be ordered, or before any application of the proceeds of the sale could be made, in which the heirs of the mortgagor had a direct interest, because the amount of the indebtedness is thereby fixed, and were therefore proper parties to the suit, although, under a bill to foreclose, the court could not, after causing the mortgaged property to be sold and the proceeds of such sale applied in satisfaction of the debt, go on

to decree that the mortgagor should pay the balance remaining unsatisfied by the proceeds of such sale. It is apparent that the conclusion of the court is not based upon a lack of power to render a deficiency judgment, and its remarks relating to such lack were therefore wholly unnecessary to a decision of the case. The only authority cited is the case of Andrews v. Scotton, 2 Bland. (Md.) 668, which, in intimating that the chancellor could not render a decree for a deficiency, cited an earlier Maryland case of Wood v. Fulton, 2 Har. & G. 72, which, in turn, was a suit on an appeal bond wherein the character of the decree or judgment appealed from as being in rem or personam was in question, and the court simply decided that a decree to the effect that, unless the defendant shall, before a given day, pay to the plaintiff mortgagee a certain sum of money, the mortgaged property mentioned in the proceedings should be sold, is a decree in rem. Counsel in that case, however, saw fit to cite the Dunkley Case as bearing on the character of the decree rendered. The Dunkley Case was soon thereafter cited by the chancery court in support of the proposition that the mortgagee may sue at the same time at law on his bond and in equity upon his mortgage (Wilhelm v. Lee. 2 Md. Ch. 322), and has been cited by the Court of Appeals of Maryland in the recent case of Rasst v. Morris, 133 Md. 187, 104 Atl. 412, but without reference to the question now before us.

The case of Cook v. Moulton, 64 Ill. App, 429, was decided in 1896 on an Illinois statute, but the Appellate Court for the First District remarked in passing, without discussion or citation of any authority, that a court is without power in a foreclosure suit to render a personal judgment in the first instance against a mortgagor, where there is no statute that authorizes it, and, except for the statute, there is no power to render a personal decree for a deficiency after sale. While no authority is cited for this dictum, we find that the Illinois Appellate Courts had previously cited the Dunkley Case at least four times: First, in Weiner

v. Heintz, 17 Ill. 259, to the proposition that a suit at
law for the balance of the debt remaining after apply-
ing the proceeds of the foreclosure sale does not open
the sale and entitle the mortgagor to redeem; next, in
Vansant v. Allmon, 23 Ill. 30, to the proposition that
a mortgagee may pursue his several remedies on his
note and mortgage at the same time; then in Palmer
v. Harris, 100 Ill. 276, where the Vansant Case was
followed; and finally in Rosenbaum v. Kershaw, 40 Ill.
App. 659, where it does not appear that a foreclosure
was in any wise involved. Thus it is seen that, while
there is no authoritative decision on the jurisdiction of
the court to enter a deficiency judgment in the absence
of statute, the dictum in the Cook Case can be traced
back to Dunkley v. Van Buren.

The point decided in the Florida case of Webber
v. Blanc, 39 Fla. 224, 22 South. 655, was that, while a
deficiency decree under a rule of court previously
adopted may be rendered in a foreclosure suit in
equity, still, if none is asked for and none is entered,
the remedy at law for the balance remains after
the sale of the property under foreclosure. The juris-
diction of a court to render deficiency judgment, in the
absence of statute or rule of court, is not involved,
but the Dunkley Case is cited in the discussion. It
is also stated that before the adoption of a rule on
the subject no decree for a deficiceny could be en-
tered in the federal equity courts, citing two United
States cases to which we shall have occasion to refer
later in this opinion.

The Missouri case cited (Mesker v. Harper, etc., Co.
221 S. W. 407), decided by the St. Louis Court of
Appeals in 1920, is not in point, since the sole ground
assigned for holding the deficiency judgment bad was
that it was not supported by the evidence.

Thus, of the nine jurisdictions cited by the text in
its support, only three of them have squarely decided
the point, and, while Cyc. does not cite the Dunkley
Case in support of the rule under consideration, yet it
is readily seen that the rule, in so far as it is an-

nounced by the cases cited traces directly back to it. This calls for a consideration of that case, which must be the more careful and painstaking because it was decided by no other than the great chancellor himself. In the opinion he said:

> "The party, on a bill to foreclose a mortgage, is confined in his remedy to the pledge. Such a suit is not intended to act in personam; it seems to be generally admitted in the books that the mortgagee may proceed at law on his bond or covenant, at the same time that he is prosecuting on his mortgage in chancery; and that, after foreclosure here, he may sue at law on his bond for the deficiency."

This statement is followed by the citation of a number of English authorities which we shall examine in a moment.

The case was decided in 1818, and it would seem to be a significant fact that the chancellor, during the remaining five years of his term of office, did not again, so far as his reported opinions disclose, notice the case or the question now under consideration, save only in the case of Jones v. Conde, 6 Johns. Ch. (N. Y. 1822) 77, where it is cited to the proposition that a mortgagee may sue at the same time, at law on the bond, and in equity on the mortgage; but no mention is made of the question before us; and when he came to write his Commentaries on American law, after retiring from office, he made no citation of the case, nor did he discuss or mention the power of a court of equity to render a deficiency judgment in a foreclosure case; and in his book, after passing through fourteen editions, we find the case cited but once, and then by O. W. Holmes, Jr., now Mr. Justice Holmes, who edited the twelfth edition in 1873; the citation being to the chancellor's proposition that—

> "The general rule is that the mortgagee may exercise all his rights at the same time, and pursue his remedy in equity upon the mortgage, and his remedy at law upon the bond or covenant accompanying it, concurrently." 4 Kent's Com. 182-184.

In other words, the case is cited as authority for the

proposition contained in that portion of the quotation from the Dunkley Case following the colon, as above set out, a rule with which we are now in nowise concerned.

In addition to the cases just reviewed, we have examined twenty-five others citing the Dunkley Case, and coming from thirteen additional jurisdictions. Fourteen of the cases employ the citation on a point other than the one under consideration usually that the several remedies may be pursued at the same time; and four of them, in so far as they discuss the rule of the Dunkley Case, are so clearly dicta as to require no further notice. Seven demand consideration, although the four Wisconsin cases are really not in point. In Walton v. Goodnow, 13 Wis. 740, the court merely held that a demurrer should not be stricken as frivolous which challenged a complaint praying for a deficiency judgment saying that the rule announced by the Dunkley Case made doubtful the right of the chancellor to render a deficiency decree in the absence of statute. Borden v. Gilbert, 13 Wis. 750, held that in the absence of statute, a deficiency judgment could not be rendered against a mere guarantor. The right to a deficiency judgment against the mortgagor or other party primarily liable was not involved. In Bliss v. Weil, 14 Wis. 38, 80 Am. Dec. 766, the Dunkley Case was cited to the proposition that the previous foreclosure of a mortgagee securing a series of notes on the falling due of the first thereof, does not bar an action at law on the other notes. In another case, reported in the same volume (Sauer v. Steinbauer, 14 Wis. 76), the court held, without noticing the Dunkley Case, that, although there was no statute directly authorizing a judgment against the mortgagor for a deficiency, yet such judgment was authorized by the Code of Civil Procedure which permitted the uniting of different causes of action. In the year following these latter decisions, the Legislature enacted a statute authorizing deficiency judgments. This statute is referred to in the fourth of the Wisconsin cases (Marling

v. Manard, 129 Wis. 580, 109 N. W. 537), where it was held, largely on the authority of the Dunkley Case, that a personal judgment could not be rendered in a foreclosure case where the foreclosure itself failed.

The Supreme Court of South Carolina, in the case of Anderson v. Pilgram, 30 S. C. 499, 9 S. E. 587, 4 L. R. A. 205, 14 Am. St. Rep. 917, refused to follow the Dunkley Case. In 1791 the South Carolina Legislature passed an act which changed the nature of a mortgage from that of a conveyance on condition to a mere lien. This statute is set out in the note to Mitchell v. Bogan, 11 Rich. 691. It will be noted that the statute makes no reference to deficiency judgments. In addition to changing the nature of a mortgage, it gives jurisdiction to common-law courts to foreclose, but, in the case of Rodgers v. Jones, 1 McCord Eq. (S. C.) 221, it was held that this only gave the law courts concurrent jurisdiction and did not divest the equity courts of their jurisdiction to foreclose mortgages. In the Anderson Case the question was whether a creditor, holding a note secured by a mortgage, while prosecuting a suit on the equity side of the court for the foreclosure of the mortgage, in which he asks for a deficiency judgment, may at the same time maintain an action at law on the note. The court said:

"We can very well understand that, where a mortgage is regarded as a conveyance and not as mere security for a debt, there is no objection to allowing a mortgagee to proceed at the same time to foreclose his mortgage, and bring an action at law to recover judgment on the debt. For there the action for foreclosure would not afford a complete remedy, as it did not contemplate a judgment for any balance left unpaid by the mortgaged property. There the mortgagee held the legal title to the mortgaged premises, subject to the mortgagor's equity to redeem, and the object of the action to foreclose was simply to cut off, bar, such equity, and not to recover the amount of the debt.

"Here, however, there is, properly speaking, no such thing as a strict foreclosure, for the legal title remains in the mortgagor, and not a mere equity to redeem. Hence, the remedy of the mortgagee here is not to foreclose or bar an equity which does not exist, but to enforce the payment of his debt by a sale of the property pledged as security therefor. The phrases, 'foreclosure of a mortgage' and 'equity of redemption,' were imported here from England along with the body of the common law, and are yet in constant use; but it

must always be remembered, in order to avoid being misled, that they have acquired a totally different meaning here from that which they bore in England. A mortgagor at common law, having parted with the legal title by the mortgage, could only regain it by paying the mortgage debt and demanding a reconveyance from the mortgagee. This was a mere equity, called the equity of redemption, and the real object and effect of judgment of foreclosure was simply to cut off this equity, and confirm the legal title in the mortgagee free from such equity. Here, however, the remedy of the mortgagee is by an action for the sale of the mortgaged premises and an application of the proceeds of such sale to the mortgage debt, and although usually called an action to foreclose, it is totally different in its character and results from a strict foreclosure.

"This being the nature of the mortgagee's remedy, to enforce which it was necessary to ascertain judicially the amount of the mortgage debt, the practice gradually, and very naturally, sprang up, allowing the mortgagee in such an action to obtain not only an order for the sale of the mortgaged premises, and an application of the proceeds to his debt, but also a judgment, enforceable by execution, for any balance which might remain unpaid by the proceeds of the sale. This practice, though for some years after the passage of the act of 1791 not recognized or acted upon, as it would seem, from what is said by Wardlaw, Ch., in Wightman v. Gray, 10 Rich. Eq. 532, has now become well settled, and very generally, if not universally, acted upon in this state, at least.

"This being the case, we see no reason why the mortgagee should be permitted to harass his debtor by two suits at the same time, both tending to the same result. The doctrine laid down by the authorities relied on by the circuit judge, as well as those cited by the counsel for plaintiffs in the argument here, can only be sustained where the action to foreclose a mortgage is regarded in a different light from what it is here. The reason given by Kent, Ch., in Jones v. Conde (6 Johns. Ch. 77), why a mortgagee is allowed to sue at law on the bond, and at the same time prosecute his action for foreclosure in the court of equity, is that one is a proceeding in rem and the other in personam; and the same learned chancellor, in Dunkley v. Van Buren (3 Johns. Ch. 330), refused to allow a judgment for the deficiency in an action to foreclose a mortgage, upon the ground that 'such a suit is not intended to act in personam,' but that the mortgagee in such an action 'is confined in his remedy to the pledge.' But in this state, where the mortgagee, in an action to foreclose, as it is called, is not confined in his remedy to the mortgaged property, but may also obtain a personal judgment—the proceeding being in personam as well as in rem—the doctrine of those authorities is not applicable."

While the only Tennessee case citing Dunkley v. Van Buren invoked it in support of a different question from that now under consideration, yet that court's decision in another case prompts an examination of the

course of decision in that state. The case of Harlan
v. Sweeny, 1 Lea, 682, was an action at law against
sureties for a balance due after the foreclosure of a
vendor's lien. The Dunkley Case is cited in support
of the proposition that a creditor may proceed against
his surety personally and at the same time seek to sub-
ject the collateral to the satisfaction of his debt. Pre-
vious to that decision the court had before it, in Mitchell
v. McKinny, 6 Heisk. (Tenn.) 83, a case where the
lower court had rendered a decree against the mort-
gagor for the total amount of his indebtedness. The
court went no further than to hold that, since no de-
murrer had been filed against the bill, there was no
error in rendering the decree for the amount of the
debt. Subsequently the question was squarely raised,
and was the only question before the court, in Nolen
v. Woods, 12 Lea (Tenn.) 615, where the court, speak-
ing through Judge Cooper, said:

"Originally, the court of chancery only granted equitable
relief in such cases, leaving the complainant to his remedy
at law for the residue of his debt. And,therefore, contrary to
the general rule about double vexation by suits at law and in
equity at the same time, a mortgagee might sue at law upon
his debt, and at the same time proceed in equity for a fore-
closure of his security. Perry v. Baker, 13 Ves. 205; Frank-
lin v. Hirsch, 3 Tenn. Ch. 469. But the courts of the United
States changed the practice by a rule of court which author-
ized the complainant to take judgment for the balance of his
debt. Orchard v. Hughes, 1 Wall. 73. In this state, the chan-
cery court has changed the practice without any rule of
court, being induced to do so, partly no doubt by the equitable
maxim, frequently recognized, that having jurisdiction for one
purpose it ought to assume it for all purposes, with a view to
the prevention of a multiplicity of suits; and partly from the
course of legislation in this state breaking down the lines of
demarcation between the courts of law and equity. The
practice is noticed in Mitchell v. McKinney, 6 Heisk. 85, and
Staub v. Williams, 1 Lea, 124."

The New Jersey court, in the case of Klapworth v.
Dressler, 13 N. J. Eq. 62, 78 Am. Dec. 69, while citing
the Dunkley case, got away from the operation of the
rule announced thereby through a clever distinction. The
question was whether or not the mortgagor's grantee,
who had assumed and agreed to pay the mortgage debt,
could be held for the deficiency; the mortgagor him-
self being insolvent. No attempt was made to hold the

mortgagor liable, so that the power of the chancellor so to do was not directly involved. The court held the grantee liable for such deficiency on the theory that he was liable over to the grantor, and, he being insolvent, the mortgagee would be without a remedy for the recovery of the debt unless equity should give him relief against such grantee. It would appear that the Legislature soon therafter established, by statute, the right to a deficiency judgment against the mortgagor himself. See Stoddard v. Van Bussum, 57 N. J. Eq. 34, 40 Atl. 29.

We now return to an interesting decision by the highest court of the state from which came the Dunkley case some three-quarters of a century before. It seems that at an early date the New York Legislature enacted that a personal judgment for deficiency might be rendered in a foreclosure suit against any party liable for the mortgage debt; such deficiency being referred to in the statute as "the balance of the mortgage debt, that may remain unsatisfied after a sale of the premises." In the case of Frank v. Davis, 135 N. Y. 275, 31 N. E. 1100 ,17 L. R. A. 306, by reason of circumstances which need not be particularly noticed, the mortgage property could not be sold under the decree of foreclosure, and it was urged by the mortgagor through his counsel, Judge Cardozo, now a distinguished member of the court, in whichthe case was decided, that, inasmuch as the deficiency could not be ascertained in the manner required by the statute, a deficiency judgment was unauthorized, and that the plaintiff was required to bring an action at law to obtain such judgment under the rule announced by the Dunkley Case. That this rule was ably urged upon the court may be conclusively presumed from the repputation of its proponent. The court, speaking through Chief Justice Earl, said that prior to the Revised Statutes the court or chancellor in an action to foreclose a mortgage "was not supposed to have" jurisdiction to render a personal judgment against the mortgagor; that this was an exception to the generaul rule that where a court of equity obtains jurisdiction of an action it will retain it and administer all relief, both legal and equitable, so far as it pertains to the same tran-

saction or the same subject-matter; the purpose of which rule was to relieve such parties from the expense and vexation of two suits, one equitable and the other legal, where the whole controversy could be adjusted in the one suit; and that "there was no reason, so far as we can perceive, for taking the case of a mortgage foreclosure out of this convenient and beneficial rule." The court held that, notwithstanding the deficiency there was not ascertained strictly as required by the statute, the court had jurisdiction to render the deficiency judgment. Thus, it is seen that, while the New York court through the Dunkley Case undertook to make an exception to the rule that a court of equity once having taken jurisdiction of the subject-matter, will retain it until complete justice is done between the parties, the highest court of that state later declared that there was no reason for taking a mortgage foreclosure out of the rule. It is also interesting to note that paragraph 482 of the subject "Mortgages" in 19 R. C. L. is largely a paraphrase of the opinion in the Frank-Davis Case.

The sum and substance of the complete history of the Dunkley Case, therefore, in so far as it relates to the question now under consideration, is that three jurisdictions, Kentucky, North Carolina and Mississippi, followed it in early cases, two, South Carolina and Tennessee, squarely refused to follow it, and one, New York, the home jurisdiction, said there was no reason for it and, in effect, refused to follow it.

Coming now to a consideration of the authorties cited by Chancellor Kent in the Dunkley Case, we find, first, Schoole et ux. v Sall, 1 Sch. and Lef. 176, an Irish case, where Lord Redsdale said that a mortgagee might sue at law on his bond at the same time he is foreclosing his mortgage in equity. Under the peculiar facts of that case, however, the mortgagee being unable to produce the title papers, the action at law was enjoined.

The next authority is Perry v. Baker, 13 Ves. 198, wherein Lord Chancellor Erskine says, at page 205, he is informed by Lord Redsdale that the practice in Ire-

land is to decree a sale instead of a foreclosure. In this case the question was whether or not a subsequent suit on the bond, secured by a mortgage previously foreclosed, would open the foreclosure and permit a redemption. At a previous hearing of the case (8 Ves. 527) the Lord Chancellor recognized the right of the mortgagee to sue at law on the bond for the difference between the amount of the debt and the value of the estate at the time of foreclosure.

Aylet v. Hill, Dickens 551, 21 Eng. Reprint 384, merely held that a mortgagee might proceed at law on his bond, notwithstanding he had obtained a decree of foreclosure.

Took's Case, Dick. 785, 21 Eng. Reprint, 476, is to the same effect, except that Lord Thurlow said that to enable the mortgage to bring an action for the deficiency he must, after the foreclosure, himself have sold the estate fairly and without collusion in order that its value might be determined. The Took Case is also reported, though in somewhat different form, in 2 Bro. C. C. 125, 29 Eng. Reprint, 73.

Dashwood v. Blythway, 1 Eq. Cas. Abr. 318, 21 Eng. Reprint, 1072, decided that an action at law on the bond after foreclosure opened the foreclosure and permitted the mortgagor to redeem. Dashwood v. Bithazey, Mos. 196, 25 Eng. Reprint, 347, is evidently the same case.

This completes the list of authorities cited by Kent. None of them is on the question of the right to a deficiency judgment in a foreclosure suit, nor should we expect them to deal with that subject, as a brief survey of the English Law relating to mortgages and the foreclosure thereof will readily demonstrate.

[9] By the early common law, a mortgage was a legal conveyance of the fee by the mortgagor to the mortgagee, upon condition, that, if the former paid to the latter a specified sum at a specified time and place, the conveyance should be defeated and the mortgagor's right and title restored; but, in default of such payment at such time and such place, the right and title

of the mortgagee became absolute, and those of the mortgagor lost forever. There could be thereafter no redemption. 1 Coke on Littleton (2d Ed.) 205 et seq. 7 Bacon's Abr. 60; 2 Blk. Com. 157. The practice seems to have been for the mortgagee, if he was not in possession at the time of default and could not procure a voluntary surrender of possession by the mortgagor, to bring an action in ejectment against the mortgagor and thereby recover possession of what had become his absolute estate. The next step in procedure relative to mortgages was for the mortgagor, upon the bringing of an action of ejectment at law by the mortgagee, to ask a court of equity to enjoin the prosecution of the suit at law, and to permit him, the mortgagor, to pay the amount of the indebtedness, principal, interest and costs, and redeem his estate, notwithstanding the time for payment had passed. The court of equity, not favoring forfeitures, would permit a redemption upon the payment in full to the mortgagee, and would perpetually stay the action at law, even though the date had passed upon which the mortgagee had originally agreed to pay it. Thus, in time, the right to redeem, or equity of redemption, became fixed in equity so firmly that a mortgagee was not safe in relying entirely upon his rights at law and dealing with the estate as his own; and so there arose the counter practice of the mortgagee seeking the aid of a court of equity to compel the mortgagor to exercise his right of redemption within a fixed time, or, in default thereof, to be forever foreclosed from redeeming; and thus originated the foreclosure suit wherein the chancellor ordered an account of the indebtedness due, including costs, and fixed a day not later than which the mortgagor might pay the amount and redeem the mortgaged estate or be forever foreclosed from so doing. Upon default of payment by the mortgagor within the time fixed by the chancellor, the legal rights of the mortgagee became absolute, and thereafter he might sell or otherwise deal with the estate as his own. The object of the foreclosure in its origin was not primarily for the recovery of the indebtedness secured by the mortgage, but to fix and declare the legal rights of the mortgagee in and to the mortgaged premises after

the mortgagor had failed or refused to pay the indebtedness. After the chancellor had given the mortgagor an opportunity to pay up and thereby save his estate, and, upon his refusal, had fixed and declared the legal rights of the mortgagee to the estate, there was nothing further to be done. Complete relief within the then prevailing theory of mortgage foreclosure had been afforded all parties. No personal judgment was granted or sought; recovery of the money not being the object of the suit. A sale was not ordered by the court, since the object to be attained was the establishment of the legal rights of the mortgagee in the estate, except under unusual circumstances which seem to have existed only when the court of equity was called upon to grant some other relief than strict foreclosure, as in the case of a deceased mortgagor, or in that of infant mortgagors, and then only for the benefit of the owner of the equity of redemption. [21 Halsbury's Laws of England, 274, §483; Daniel v. Skipwith, 2 Bro. C. C. 155, 29 Eng. Reprint, 89; Brocklehurst v. Jessop, 7 Sim. 438, 58 Eng. Reprint, 906; Pace v. Marsden, Seaton's Decrees, 275; Wakeham v. Lome, Seaton's Decrees, 275; Hammond v. Bradley, Seaton's Decrees, 275; Mondey v. Mondey, 1 V. & B. 223, 35 English Reprint, 87; Booth v. Rich, 1 Vern. 295, 23 Eng. Reprint, 478.

The practice of decreeing a sale seems to have prevailed in Ireland, but we are not here concerned with the Irish practice. This was the foreclosure suit known to the English courts at the time of our separation from the mother country, a suit for strict foreclosure only, and seems to have so remained until the passage of the statute of 15 and 16 Vict. in 1852, at which time the court was permitted to order a sale in its discretion, which permission seems to have prevailed from that time to the present. The procedure was further modified by the Judicature Act of 1873. Prior to the Judicature Act, it was permissible for the mortgagee, after his legal rights to the estate had been established, to institute an action at law on his bond or covenant for the recovery of the difference between the value of his estate secured in the foreclosure and the amount

of the indebtedness, if he was still in a position to re-convey the premises to the mortgagor upon the payment in full of the whole indebtedness. Such an action, of course, was necessarily instituted after the court of equity had administered all the relief possible under the then prevailing theory of strict foreclosure.

For sources, other than those already cited, see the following: Jenks. History of English Law, 123 et seq.; Hazeltine, Gage of Land, 3 Essays Anglo-American Legal History, 646; Scoutton, Roman Law Influence, 1 Essays Anglo-American Legal History, 208 at 218; Crabb's History of English Law, 272; Emmanuel College v. Evans, 1 Chanc. Rep. 18, 21 Eng. Reprint, 494; Rossarrick v. Barton, 1 Chanc. Cas. 217, 22 Eng. Reprint, 769; Took v. Bishop of Ely, 5 Bro. 181, 2 Eng. Reprint, 613; Wichalse v. Short, 3 Bro, 558, 1 Eng. Reprint, 1497; Jones v. Kenrick, 5 Bro. 244. 2 Eng. Reprint, 655; Booth v. Booth, 2 Atk. 343, 26 Eng. Reprint, 609; Kinnoul v. Money, 3 Swan. 202, 36 Eng. Reprint 830; Dearman v. Wyche, 9 Swan. 570, 59 Eng. Reprint, Tipping v Power, 1 Hare 405, 66 Eng. Reprint, 1090; Lockhart v. Hardy, 9 Beav. 349, 15 L. J. Ch. 347, 50 Eng. Reprint. 378, 10 Jur. 532, 18 Eng. R. C. 434; Farrer v. Lacy, etc., Co., 31 Ch. Div. 42, at page 49; Heath v. Pugh, 6 Q. B. D. 345, at 359; 21 Hals, Laws of England 287, et seq. §§ 511 and 512; Goodier v. Ashton, 18 Ves. 83; 1 Daniel's Ch. Practice 227; Lucas v. Seale, 2 Atk. 56; 2 Chitty's Eng. Stats. (6th Ed.) 816.

Thus does it appear, not only that the English authorities cited by Chancellor Kent do not support the rule under consideration, but also that there were then no such authorities, and furthermore, under the then prevailing theory of mortgages, and of the respective rights of mortgagor and mortgagee, we could not expect the question to have been discussed by the English courts. Such discussion would have been entirely foreign to the subject.

So much for the rule of the text-writers and its

foundation. We make no attempt at subtle refinement
in an effort to distinguish the facts of this case from
those in Dunkley v. Van Buren; but, on the contrary,
we make bold to say frankly that, in view of the rad-
ically changed theories relating to mortgages and the
rights of parties thereto, as compared with those which
prevailed at the early common law, and in a jurisdic-
tion where a mortgage is no longer considered as a
conveyance of the fee, conditional or otherwise, but
merely a lien for the security of the mortgagee in the
performance of the mortgagor's obligation (Cleveland
v. Bateman, 21 N. M. 675, 158 Pac. 648, Ann. Cas.
1918E, 1011), and where the object of the suit is not
to cut off the equitable rights of the mortgagor and
definitely fix the legal rights of the mortgagee, but
to enforce payment of the debt secured by the lien
of the mortgage, the Dunkley Case is wrong in prin-
ciple and should not be followed. We agree with the
later New York case ( Frank v. Davis, supra) that
there is no reason why the case of a mortgage fore-
closure should be made an exception to the rule that,
where a court of equity obtains jurisdiction of an ac-
tion, it will retain it, and administer full relief, both
legal and equitable, so far as it pertains to the same
transactions or the same subject-matter. This is a
just, convenient, and beneficient rule, whereby parties
are saved the expense of double litigation over the
same matters, and has been generally recognized and
applied from a time, at least 100 years before the sepa-
ration from the mother country, when Lord Chan-
cellor Nottingham, then Lord Keeper, in Parker v.
Dee, 2 Chanc. Cas. 200, 22 Eng. Reprint, 910, quaintly
said:

"When this court can determine the matter, that shall not
be an handmaid to other courts, nor beget a suit to be ended
elsewhere."

In a foreclosure suit, the chancellor must necessarily
retain jurisdiction of the cause until after the sale and
report of the special master, and necessarily must have
adjudicated the indebtedness and determined the

amount thereof, so that, if there be a deficiency, a determination of the amount becomes a mere matter of subtraction. Why then should the parties be put to further delay and expense in relitigating the same issues when the chancellor, under a rule so long and generally recognized, can promptly and without further expense do complete justice between the parties? 1 Pom. Eq. Jur. (14th Ed.) §§231-242. For application of the rule to suits for the foreclosure of mortgages and other liens see Dover Lumber Co. v. Case, 31 Idaho, 276, 170 Pac. 108; Installment Building & Loan Co. v. Wentworth, 1 Wash. St. 467, 25 Pac. 298; Evans v. Kelley, 49 W. Va. 181, 38 S. E. 497; Fidelity Tr. & G. Co. v. Fowler Water Co. (C. C.) 113 Fed. 560; Albrecht v. C. C. Foster Lumber Co., 126 Ind. 318, 26 N. E. 157; Rison v. Moon, 91 Va. 384, 22 S. E. 165; Hathaway v. Hagen, 64 Vt. 135, 24 Atl. 131; Anderson v. Pilgram, supra; Nolen v. Woods, supra; Beecher v. Lewis, 84 Va. .630, 6 S. E. 367; Manhattan Life Ins. Co. v. Hammerstein Opera Co., 184 App. Div. 440, 171 N. Y. Supp. 678.

In the Dover Lumber Co. Case the court said:

"Appellants next contend that the court erred in entering personal judgment against Case for the sums found to be due to respondent and secured by the mortgages; that, this being a suit in equity, a personal judgment could not be obtained, as such a judgment can be had only at law. The case was commenced to foreclose the mortgage, and equity, having acquired jurisdiction for that purpose, will retain it and conclude all matters in controversy involved within the issues. Rees v. Gorham, 30 Idaho, 207, 164 Pac. 88. See, also, Downing v. Le Du, 82 Cal. 471, 23 Pac. 202; Connecticut Mut. L. Ins. Co. v. Cross, 18 Wis. 116; Van Valkenburgh v. Oldham, 12 Cal. App. 572, 108 Pac. 42; Coghlan v. Quartararo, 15 Cal. App. 662, 115 Pac. 664; Gresens v. Martin, 27 N. D. 231, 145 N. W. 823. It has been held in this state that where a party sues to foreclose a mortgage which is found to be invalid, if he establishes the debt he may have judgment for the amount due. Jaeckel v. Pease, 6 Idaho, 131, 53 Pac. 399."

[6]     It is our opinion, and we so hold, that the court, sitting as a chancellor, had jurisdiction to render a deficiency judgment, and it follows that the de-

fendants were not entitled to a jury trial because that issue was involved.

But there is another reason why the defendants were not entitled to a jury trial on the ground that a deficiency judgment was sought—a reason which does no violence to the rule announced by the text writers, and which probably accounts for the practice in this state. All agree that a court of equity has jurisdiction to enter a deficiency judgment where provision is made therefor by statute or rule of court. In the case of Noonan v. Braley, sometimes cited as Noonan v. Lee, 2 Black, 499, 17 L. Ed. 278, the Supreme Court of the United States had before it an order of the lower court on the mortgagor to pay the balance remaining unsatisfied after exhausting the proceeds of the mortgaged premises. After a discussion of the power of the court to make rules, Mr. Justice Swayne said:

"A majority of my brethren are of the opinion, and I am directed by them so to announce, that in the absence of a rule of this court authorizing it to be done, it was not competent for the court below to make such an order."

This constitutes the entire discussion of the subject, and no authority whatever is cited. The next year the Noonan Case was followed, with some dissent, in Orchard v. Hughes, 1 Wall. 73, 17 L. Ed. 560. These are the two United States cases referred to by the Florida court in Webber v. Blane, supra. Immediately thereafter the Supreme Court adopted a rule which authorized the federal and territorial courts to render judgments for deficiencies. The text of the rule will be found at page vii of 1 Wall, and later came to be known as rule 92. It is substantially the same as new equity rule 10.

Prior to statehood there was in force in this territory a statute which provided that the Supreme and district courts, in the exercise of chancery jurisdiction, should conform in their decisions, decrees and procedure to the laws and usages peculiar to such jurisdiction in the territory and the courts of the United

States. This was section 522 of the Compiled Laws of 1884, and section 878 of the Compiled Laws of 1897. After statehood the act was not carried forward into the Code of 1915.

In the case of Ford v. Springer Land Ass'n, 8 N. M. 37, 41 Pac. 541, the Supreme Court of the territory had before it the question of the authority of the territorial courts to render a deficiency judgment in a suit to foreclose a mechanic's lien, and based its decision on said section 522, C. L. 1884, and said equity rule 92, both of which are quoted in the opinion. The court said:

"The sixth assignment is that it was error 'in providing that the decree entered in said cause should operate as a personal judgment against each of the appellants,' the Springer Land Association and its associates. There are no authorities cited in the briefs of appellants or appellee in support of or against this proposition, and we have no statute on the subject. In equitable proceedings a court of chancery will, when it is possible, afford a complete remedy; but it has been held in a state where there is no statute authorizing a deficiency judgment in foreclosure proceedings that it cannot be entered. Noonan v. Braly, 2 Black (U. S.) 499; Orchard v. Hughes, 1 Wall. 73. Our statute provides as follows: 'Sec. 522. The said Supreme and district courts, in the exercise of chancery jurisdiction, arising under all causes and matters in equity, shall conform in their decisions, decrees and proceedings to · the laws and usages peculiar to such jurisdiction in this terri_ tory, and the Supreme, Circuit, and District Courts of the United States.' By the rules of practice for the courts of equity of the United States it is provided as follows: '(92) . Ordered, that in suits in equity for the foreclosure of mortgages in the Circuit Courts of the United States, or in any court of the territories having jurisdiction of the same. a decree may be rendered for the balance that may be found due to the complainant over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in the eighth rule of this court, regulating the equity practice, when the decree is solely for the payment of money.' This rule amended rule 8, which provided, among other things, that 'final process to execute any decree may, if the decree be solely for the payment of money, be by a writ of execution, in the form used in the circuit court in suits at common law in actions of assumpsit.' United States court rules. The bill of complaint contains a proper prayer in case of deficiency, and there was no error in the court below in entering a deficiency judgment and order for the writ of execution to issue in that event. Dodge v. Friedmans Savings & Trust Co., 106 U. S. 445."

Thus it is seen that the territorial equity courts were authorized by a combination of statute and rule of court torender deficiency judgments, and of course, the whole proceeding being in equity, there was no right to a jury trial. As we have already seen, the constitutional right to a trial by jury is the same as the right existed before statehood, and, since there was then no such right in a case of this kind, there is none now.

While this theory, by force of unanimous precedent, also sustains the action of the lower court in denying the application for jury trial, we are inclined to have more faith in the logic of the theory previously discussed. If, as the cases supporting this theory assume, the mortgagee, in the absence of statute or rule of court, can recover his deficiency judgment only by an action at law, wherein the mortgagor would have the constitutional right of jury trial, whence comes the power of the Legislature by statute or of the court by rule to deprive him of that constitutional right in giving the equity courts a new jurisdiction? But this only in passing. Those who prefer precedent to principle will consider this the stronger theory.

The next point urged by appellants is that the court erred in denying them a jury trial of the issues raised on the cross-complaint. They say that the issues thus raised were purely legal, and that had the cross-complaint been filed as an independent suit, they would have been entitled to a jury trial under the Constitution, and that the situation has in no wise been changed by their electing to submit the subject-matter of their grievance to the court for adjudication by way of a cross-complaint.

[7] We have already held, supra, that the original complaint and cross-complaint are but one suit, and that, under the statute, the subject-matter of the cross-complaint must necessarily be in and constitute a part of the main suit. Before appearing in the foreclosure suit, the defendants had at their command an

aggregate of facts which, in their opinion, constituted a proper basis for the assessment of damages in their favor and against those parties afterwards made cross-defendants; but, until they went further, they had no right to a jury trial—in fact had no right to a trial at all, because such facts had in no manner been presented to a tribunal for adjudication. They had no right to a trial of any kind on these facts until they had been presented by some recognized form of procedure to a court of competent jurisdiction, and certainly had no specific right to a trial by jury before they had the general right to a trial. In presenting these facts to a tribunal they might have filed an independent action at law, whereupon their constitutional right to a trial by jury would have accrued; they being in no wise compelled to present them to the tribunal which had acquired jurisdiction of the foreclosure suit. They did not pursue this course, however, but, on the contrary, sought the tribunal which had acquired jurisdicition and was then in process of foreclosing the mortgage, and, which, as we have seen, was a court of equity; and, by filing their cross-complaint in that pending suit, in effect said to the chancellor:

"We are ready and desire to litigate, not only the subject-matter of the allegations of the plaintiff's bill for foreclosure, but herewith present to you allegations of other facts which we desire to have adjudicated in connection with, and as a part of, the foreclosure."

Under the statute they had the right to file their cross-complaint so long as it related to or was dependent upon the subject-matter of the foreclosure suit, and the chancellor had jurisdiction to hear them and adjudicate such issues as might be raised thereby. But in thus presenting such matters to the court of equity, they never at any time became entitled, as a matter of right, to trial by jury. By their own procedure, they in effect asked the court of equity to apply the equitable principle already discussed and do complete justice between the parties, to the end that all matters

connected with or relating to the foreclosure suit might be adjudicated and the parties afforded all relief, both equitable and legal, to which their proof might show them to be entitled.

In a large majority of the jurisdictions wherein the question has been raised, it is held that the interposition by the defendant in an equitable action of a counterclaim of a legal nature gives him no right to a jury trial, either of the action generally or of the issues raised by the counterclaim, and in this particular we see no distinction between a counterclaim and a cross-complaint, except that probably the rule is applicable to the latter with even greater reason, since a cross-complaint must be connected with the subject-matter of the main suit, while a counterclaim, under the statute, is not always necessarily so connected. The authorities up to 1914 are collected in a note to Johnson Service Co. v. Kruse, 121 Minn. 28, 140 N. W. 118, Ann. Cas. 1914C, 850, at page 852 of the last-named volume.

In Morrissey v. Broomal, 37 Neb. 766, 56 N. W. 383, the court said:

"Did this counterclaim of the appellant for damages oust the court of its equitable jurisdiction? Is a defendant to a purely equitable suit entitled as a matter of right and law to a jury for the trial of an issue of law which he has voluntarily brought into the case? We think not. The appellant had a right, if he was so minded, to file his counterclaim for damages in this equity suit. It was an independent cause of action existing in his favor and against appellees, but appellant's cause of action on his counterclaim was not lost to him or barred had he left it out of this suit. The action as made by the appellees in their cross-petition was one purely of equitable cognizance; but part of the relief demanded by the appellant could only be granted by a court of equity. The familiar principle is that when a court of equity acquires jurisdiction over a cause for any purpose it may retain the cause for all purposes, and proceed to a final determination of all the matters put at issue in the case. 1 Pom. Eq. Jur. § 181, and cases cited. In Wilson v. Johnson, 74 Wis. 337. 43 N. W. Rep. 148, it is said: 'An action to enforce a lien upon a pledge is an equitable one, triable by the court.' In Loan Co. v. Wentworth, 25 Pac. Rep. 298, the Supreme Court of Washington says: 'As the forclosure of a mechanic's lien is a proceeding cognizable in a court of equity, the mere fact that

the defendant in such suit interposes a counterclaim for damages, as he is allowed to do by the laws of Washington, is not sufficient to divest such court of its jurisdiction, and to entitle the defendant to demand a trial by jury.' This court said in Dohle v. Machine Co., 15 Neb. 436, 19 N. W. Rep. 644, that 'an action to foreclose a mechanic's lien is essentially a suit in equity, and a party is not, as a matter of right, entitled to a jury trial therein.' See, also, Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. Rep. 554; Ryman v. Lynch, 76 Iowa, 587, 41 N. W. Rep. 320. After the evidence was in, it appeared that the grain called for by the warehouse receipts sought to be foreclosed had been already disposed of by the appellant, and his counsel now contends that the court should have then impaneled a jury. But this position is untenable. The court was sitting in equity. It had before it on the pleadings an equitable action, and it did not lose its jurisdiction, because the evidence discloses that the only adequate relief it could afford was a personal judgment. Van Rensselaer v. Van Rensselaer, 113 N. Y. 207, 21 N. E. Rep. 75. The court was right in refusing the appellant a jury trial."

In the case of the Installment Building & Loan Co. v. Wentworth, 1 Wash. St. 467, 25 Pac. 298, the Supreme Court of Washington discussed the question in this wise:

"The defendant demanded a trial by jury upon the issues raised by its answer and the reply thereto. This was refused by the court, and its action in so doing is relied upon as cause of reversal. That the foreclosure of a mechanic's lien is properly cognizable in a court of equity is not denied, but it is contended that as the defendant had a right under our statute to interpose a legal defense, all rights incident to such legal defense, and the issues made thereon, went with it, including that of a trial by jury. With this contention we cannot agree. A court of equity, having once obtained jurisdiction of the cause, will retain it until final determination. 1 Pom. Eq. Jur. §§ 181, 183; Rathbone v. Warren, 10 Johns. 587; Martin v. Tidwell, 36 Ga. 332. The circumstance that in the progress of the cause an issue of fact was made that would ordinarily be triable by a jury cannot change this rule. It is true, as claimed by the appellant, that a plaintiff cannot, by joining a legal with an equitable cause of action, deprive a defendant of his right to a jury trial; but that does not aid the appellant in his contention. On the contrary, from like reasoning, it would seem to follow that a defendant, by voluntarily bringing a law question into the case, could not prevent a plaintiff from having his equitable cause proceed to a determination according to the rules applicable to such cases. Defendant in the case at bar could have maintained a separate action for its alleged damages; and if, instead of doing so, it saw fit to plead them in a cause in equity, it could

not thereby change the rule of procedure applicable to such cause."

The editor of the note above referred to gives Idaho as one of the three jurisdictions that hold contrary to the majority, and refers to the cases of Robertson v. Moore, 10 Idaho, 115, 77 Pac. 218, and Sandstrom v. Smith, 12 Idaho, 446, 86 Pac. 416, but since that note was written the Supreme Court of Idaho, in the case of Dover Lumber Co. v. Case, 31 Idaho, 276, 170 Pac. 108, specifically overruled those earlier cases and adopted the majority rule in the following language:

"The next question presented is whether the court erred in denying a trial by jury of Case's counterclaim. It is said in 24 Cyc. pp. 126, 127: 'The fact that defendant sets up a legal defense to an equitable cause of action does not change the character of the proceedings or entitle him to demand a jury trial. * * * In the absence of a statute a defendant who pleads a counterclaim in an equitable action is not entitled to a jury trial of the issues arising thereon, notwithstanding the cross-demand constitutes an independent cause of action upon which a separate action might have been brought and a jury trial demanded.'

"In Johnson Service Co. v. Kruse, 121 Minn. 28, 140 N. W. 118, Ann. Cas. 1914C., 850, the law as above quoted was followed, and there is appended to that case an exhaustive note showing it to be supported by the great weight of authority. By an expression which was obiter dictum, in Robertson v. Moore, 10 Idaho, 115, 77 Pac. 218, and again in Sandstrom v. Smith, 12 Idaho, 446, 86 Pac. 416, this court seems to have announced a contrary doctrine, and these cases, so far as they conflict with the rule above quoted, are hereby overruled."

Kentucky and New York, the remaining jurisdictions referred to in said note as holding contrary to the general rule, have statutes entirely different from ours upon which their decisions are based. The court below did not err in denying appellants a jury trial of the issues raised on the cross-complaint.

For miscellaneous cases wherein the right to jury trial in foreclosure suits was claimed and denied, see Case Threshing Machine Co. v. Copren Bros. 45 Cal. App. 159. 187 Pac. 772; Gresens v. Martin, 27 N. D. 231, 145 N. W. 823; Neikirk et al. v. Boulder National

Bank, 53 Colo. 350, 127 Pac. 137; Brown v. Russell et al., 105 Ind. 46, 4 N. E. 428; Clough v. Seay, 49 Iowa, 111; Leach v. Kundson, 97 Iowa, 643, N. W. 913.

Finally we come to a consideration of appellants' contention that their motion to dismiss their cross-complaint should have been sustained. It will be recalled that upon that motion being made the cross-defendants objected to the dismissal on the ground that they would be prejudiced thereby, and that, at their request, the court heard evidence and found the facts in support of their objection, refusing thereupon to permit the dismissal of the cross-complaint. In Andrews v. French, 17 N. M. 615, 131 Pac. 996, this court said:

"A party usually has the right to discontinue any action or proceeding instituted by him, unless substantial rights of other parties have accrued, and injustice will be done them by permitting the discontinuance. While such dismissal must be by order of the court, and the court has discretionary control over its orders and decrees, if no facts appear which show that such dismissal will violate any of the rights or interests of the adverse party, a refusal of leave becomes merely arbitrary and without any basis upon which discretion can rest."

Then, after further discussion, including the quotation of section 4295, Code of 1915, then section 2908 of the Compiled Laws of 1897, the court continued:

"The language is very broad and includes all cases. The right to dismiss, however, is, of course, dependent upon whether such dismissal will leave the defendant in the same position as he would have stood if the suit had not been instituted; he would not have the right where there has been a proceeding in the cause which has given the defendant a right against the plaintiff, or an injustice would be done the defendant by the dismissal."

[8] As we understand appellants, they find no fault with the rule announced by the Andrews Case, but contend, first, that no injustice would have been done the cross-defendants by such dismissal, and, second, that the court erred in hearing testimony in opposition to the motion to dismiss. With reference to the

latter contention, it is probable that the cross-defendants took their cue from the language of the opinion in the Andrews Case, and, by the introduction of evidence, sought to prevent their case from being one where "no facts appear which show that such dismissal will violate any of the rights or interests of the adverse party." Appellants cite us no authority in support of their objection to the hearing of testimony, but argue generally, that the prejudice or interest, if any, must appear from the pleadings. On the other hand, appellees call our attention to the Nebraska case of Horton v. State ex rel. Hayden, 63 Neb. 34, 88 N. W. 146, where, in speaking with reference to the question of the right to take a voluntary dismissal in the absence of prejudice to the adverse party, the court said:

"The discretion of the court in such cases is grounded on the requirements of justice to itself, its officers, and the adverse parties. It depends upon the existence of rights which would be jeopardized by dismissal, not upon the manner in which the court becomes cognizant of such rights. The absence of a formal claim or assertion thereof upon the record does not necessarily give the plaintiff advantage."

We see no good reason for denying to the court the means of obtaining information, by the hearing of evidence, which would enable it to intelligently and justly exercise its discretion in ruling on the motion for voluntary dismissal, opposed, as it was, by the appellee's objection that they would be prejudiced and injustice done them if it should be granted. To paraphrase the Nebraska opinion above quoted, the court was concerned as to the existence or nonexistence of rights which would be jeopardized by dismissal more than it was in the manner in which the court should become cognizant of such rights.

As to the appellants' claim that there was in fact no prejudice or injustice shown, suffice it to say that we have examined the evidence in connection with the finding of the court and see no occasion for disturbing that finding or interfering with the result of the exercise of discretion by the court.

Seldom does a case, freighted with so many questions of fundamental importance, reach an appellate court. We have endeavored to give each of these questions the consideration which its importance demands, and, assisted though we have been by excellent briefs and helpful argument of able counsel on both sides, we have not reached our decision in a moment. While at times our consideration of authorities has led us back to the formative periods of the common law and the rules of equity, we have not used the past as a permanent camp but rather as a base of supply for present day operations. On some of the questions, as for instance the right to jury trial in a case of this kind, we have gone into considerable detail, even at the risk of becoming prolix, but an opinion by Chancellor Kent, even though it bears the earmarks of slight consideration by its author, must be given a most careful and painstaking analysis before our disagreement therewith could be expected to merit the approval and respect of the profession.

From our conclusions reached on the several questions presented, it follows that the judgment of the court below should be affirmed, and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.

On Motion for Rehearing.

BOTTS, J. Appellants, by their motion for rehearing and the brief in support thereof, ask us to give further consideration to the proposition of their right to trial by jury. They say that our decision is, to use their own language:

"That the nature of the action, whether legal or equitable, is determined from the complaint alone—that is to say, if plaintiff files a complaint which states a cause of action triable in equity, nothing that may thereafter appear in the pleadings can possibly give rise to the trial of any controverted fact according to the course of law. It is this proposition that we respectfully request the court to further consider. Does the nature of the complaint absolutely determine the course of the procedure as to trial?"

We have examined our previous opinion in vain

for any indication that we have either directly or by implication reached such a decision as that stated by appellants. We did not so decide, nor was it necessary or proper for us to give consideration to the general question of whether or not a plaintiff might, by the form and verbiage of his complaint, absolutely control the final selection of the tribunal by which his cause of action should be adjudicated. The relief to which the plaintiff was entitled in this case was the foreclosure of his mortgage, and that relief could only be administered by a court of equity. When a plaintiff undertakes to so frame his complaint as to make it appear on the face thereof that he is seeking equitable relief, when, as a matter of law and fact the law courts could afford him a plain, adequate, and complete remedy, it will be time enough for us to consider the question now suggested by appellants, and, when that time arrives, without undertaking to bind the court in any way, it is not improbable that the real inquiry will be largely whether or not the facts in the case disclose that a court of law can furnish a remedy that is plain, adequate, and complete. Pankey v. Ortiz, 26 N. M. 575, 195 Pac. 906. These facts might appear from the complaint, or from uncontroverted allegations of the answer, or from the evidence, or from all combined, since the Code permits a litigant to secure a hearing upon a simple and concise statement of the facts to be relied upon without regard to form.

If we were to apply that test to the present case, it is readily apparent that a court of law cannot supply the remedy to which the plaintiff is entitled, to wit, the foreclosure of his mortgage. Nor would such a test in any wise conflict with the case of the Southern Railway v. Howell, 89 S. C. 391, 71 S. E. 972, Ann. Cas. 1913A, 1070, now strongly relied upon by appellants. The facts in that case are that the defendant had fenced a portion of the plaintiff's right of way and claimed title to the portion inclosed, and the plaintiff, instead of filing an action at law to recover possession of its right of way, filed a complaint in the

nature of a bill in equity to restrain the maintenance of the fence as a continuing trespass. The right of way was an easement across land of which the defendant was the owner of the fee. The defenses were estoppel and abandonment, which the court held to be legal defenses. The language of the opinion relied upon by appellants is as follows:

"It will not be necessary to notice the complaint in detail to determine whether, in form, it is an action for the recovery of the possession of real estate, as contended by appellant, or whether it is only an action in equity for injunction, as contended by respondent, and, therefore, one of equitable cognizance. It has been decided by this court too often to require citation of the cases that a plaintiff cannot, by framing his complaint so that his action would, under the old procedure, be one cognizable only by a court of equity, select the forum in which the issue shall be tried and thereby defeat a defendant's constitutional right of trial by jury. The complaint alone does not necessarily determine the character of the issues—whether they are legal or equitable—or the mode of trial to which the parties are entitled. Those are questions which must be determined from an examination of all the pleadings in the case. Now, in this case, the defendant claims title to the land in dispute, based upon the defenses mentioned. If they present issues which, before the adoption of the reformed procedure, were legal in their nature—that is, issues which were cognizable by a court of law, then the defendant was entitled to have them decided by a jury."

When it was understood that the relief, if any, to which the plaintiff in that case was entitled under the facts, was possession of the land inclosed by the defendant, which relief could have been readily administered by a court of law, there is nothing in the opinion which runs counter to what we have said, either here or in our former opinion. A little later we shall have occasion to notice what the South Carolina courts have to say with reference to the right to jury trial in cases such as the one now before us.

Neither is the Indiana case of Reichert v. Krass, 13 Ind. App. 348, 40 N. E. 706, 41 N. E. 835, also relied upon by appellants, in any wise contrary to our holding. We shall also have occasion to notice that case later.

While the point which is made by appellants is not
well taken, it has occurred to us that probably in our
original opinion we did not give sufficient considera-
tion to appellants' claim of right to a jury trial on the
cross-complaint, considered solely and strictly as a de-
fense to plaintiff's cause of action. Our consideration
was largely based upon the theory that the allegations
of the cross-complaint could have formed the basis
of an independent action at law which the appellants
voluntarily brought into the equity suit. A more care-
ful examination of the cross-complaint discloses that
the allegations thereof are sought to be made available
against the plaintiff on two theories. The first is that
the plaintiff was in reality the original payee and
mortgagee, and mortgagee corporation being a mere
dummy; the second is that the contract out of which
the note and mortgage grew had been breached by the
mortgagee prior to the assignment to the plaintiff, and
that plaintiff had full notice of the breach, and there-
fore took the note and mortgage subject to the same
"equities" which existed in favor of the defendants
and against the mortgagee.

The first theory is the one to which we gave con-
sideration in arriving at our conclusion that defend-
ants were not entitled to a jury trial of the issues on
the cross-complaint. In that conclusion we think we
were correct. On that theory defendants were not
compelled to plead the breach of the contract in this
suit, and would not have been in any wise prejudiced
by their failure so to do in a subsequent action at law
for damages. See extensive note, 8 A. L. R. 694.

But, under the second theory of the cross-complaint,
considered solely and strictly as a defense against re-
covery by the plaintiff who held the note and mort-
gage subject to defendants' equities, it is probably
true, at least we shall here assume it to be true, that
defendants were compelled to plead the subject-matter
of their cross-complaint or forever lose the benefit of
such defense. What was the nature of the defense?
Defendants claim that the mortgagee had not done

all that it had agreed to do by the contract, in consideration of which the note and mortgage had been given—in other words, that there had been a failure of consideration. It is elementary that consideration is an essential element in every contract, and this is no less true in equity than it is at law (3 Pom. Eq. Jur. [4th Ed.] 3114, §1293) and therefore a contract, without consideration, is no more enforceable in equity than it is at law. In fact, failure of consideration can often be shown at law, as for instance, where the contract is under seal. 3 Pom. Eq. Jur. (4th Ed.) 3114, §1293; Corbett v. Cronkhite, 239 Ill. 9, 87 N. E. 874; Steinmeyer et al. v. Steinmeyer et al., 55 S. C. 9, 33 S. E. 15; Couch v. McCoy (C. C.) 138. Fed. 696; Vasser v. Vasser, 23 Miss. 378; Burling v. King, 66 Barb. (N. Y.) 633; Minturn v. Seymour, 4 Johns. Ch. (N. Y.) 498; In the Matter of the Estate of Webb, deceased, 49 Cal. 541; Meek v. Kettlewell, 1 Hare, 464, 66 Eng. Reprint, 1114; Jefferys v. Jefferys Cr. & Ph. 139, 41 Eng. Reprint, 443; Cochrane v. Willis, 34 Beav.. 359, 55 Eng. Reprint, 673.

In this case, however, it is not contended that the failure of consideration has been total, but only partial, and our own court in territorial days held that partial failure of consideration is a defense pro tanto. Staab v. Garcia y Ortiz, 3 N. M. 33, 1 Pac. 857. The defense of partial failure of consideration, of course, rests on a somewhat different ground from that of total want of consideration, in that the latter goes to the validity of the contract, whereas the former goes merely to the reduction or extinguishment of plaintiff's claim, and is in reality but an application of the doctrines of recoupment, set-off, or compensation. But these doctrines were all known and applied by courts of equity long before they were recognized in courts of law (3 Story's Eq. Jur. [14th Ed.] § 1866 et seq.; 1 Pom. Eq. Jur. [4th Ed.] 222, § 175; 2 Pom. Eq. Jur. § 704), and were proper defenses to suits in equity. Equity was the originator of the right and practice of balancing debits against credits growing out of the

transaction involved in a suit, and always weighed the
"equities" of the parties to the end that a just and
equitable decree might ultimately be rendered. A quo-
tation from Pomeroy, by which he compares the prac-
tice of courts of law with that of courts of equity in
this respect, may not be out of place here. 1 Pom.
Eq. Jur. (14th Ed.) 222.

"Another important element of the concurrent equitable
jurisdiction exists in the marked difference between the
modes of proceedure at law and in equity with reference
to the actual rendition of final judgment and the form of
such judgment. The judgment in an action at
law, unaltered by modern statutes, is most truly a yea,
yea, or a nay, nay; that is, it is a single, undivided award,
or denial of some one of the three kinds of relief above
described as alone possible; no adjustment of opposing
rights, no partial relief to each of the opposing litigants,
is permitted. The judgment is either for the defendant
wholly, that the plaintiff take nothing by his action, or for the
plaintiff wholly, that he recover possession of a specified tract
of land, or of a specified chattel, or that he recover a single
sum of money from the defendant, or from all the de-
fendants if there are more than one. The doctrine of set-
off, by which a defendant may recover judgment for a debt
against the plaintiff, is wholly of a statutory origin; and
the doctrine of recoupment, by which the plaintiff's pecu-
niary recovery may be lessened by means of a claim for
damages in favor of the defendant, is a very recent innova-
tion upon the common-law methods of procedure. The
modes of procedure in a court of equity have never been
thus restricted. Its decree is not confined to a single ad-
judication for or against the defendant; but as a prelim-
inary, and leading up to the final award in favor of either
party, or even in the very final award itself being thus
partially in favor of both litigants, it may make any adjust-
ments, admit any limitations, and determine upon any
cross-demands and subordinate claims which complete justice
done to the parties shall require. The decree in equity
can thus easily shape itself to the circumstances of each
case, even when the final relief is only an award of money,
or of possession of land or of chattels."

So, assuming the rule to be that a defendant must
plead all available defenses if he would have the bene-
fit thereof, the rule is applicable to suits in equity no
less than to actions at law, and, had this suit been
brought under the old equity practice and before the
adoption of the Code, the defendants would have been
compelled to plead their defenses and would not have

been entitled to a jury trial of the issues raised thereby. The Code has not given litigants a new substantive right to a jury trial where none existed before and, since the right did not previously exist in this kind of case, it has no existence now.

The case of Daniels v. Mutual Ben. Ins. Co., 73 Neb. 257, 102 N. W. 458, was a suit to foreclose a mortgage in which the defendant interposed a legal defense. The court held that the interposition by a defendant of a legal defense to an action originally instituted to obtain equitable relief alone does not secure for the defendant a right to a trial by jury of the legal defenses. Crissman v. McDuff, 114 Iowa, 83, 86 N. W. 50, was a suit in equity to foreclose an attorney's lien. Under the provisions of an Iowa statute, the defendant gave a bond which had the effect of releasing the lien, and then demanded that the cause be transferred to the law docket and tried by a jury, on the theory that the filing of the bond reduced the attorney's claim to a mere money demand. The court held that the refusal to transfer the cause to the law docket was not an infringement of defendant's right to a jury trial, since a defendant has no right to a jury trial, of an issue of law presented by an answer in a suit properly brought in equity. The case of Angus v. Craven, 132 Cal. 691, 64 Pac. 1091, was a suit in equity to quiet title to certain land and to cancel certain deeds under which defendant claimed. The defendant filed a cross-bill in the nature of a legal action in ejectment, and demanded a jury trial of the issues raised thereby. It was alleged by plaintiff that defendant's claim was false and fraudulent and based in part upon certain false and forged deeds. The court held that it was not error to deny defendant a jury trial. See, also, Gatch v. Garretson, 100 Iowa, 252, 69 N. W. 550, and Ryman v. Lynch, 76 Iowa, 587, 41 N. W. 320.

The case of Reichert v. Krass, 13 Ind. App. 348, 41 N. E. 835, is the one hereinbefore referred to as being relied upon by appellants. The opinion, appearing at that citation, is the one on rehearing, and a com-

plete understanding thereof can be obtained only by a consideration of the original opinion reported in 40 N. E. 706. The plaintiff filed a suit in equity to foreclose a mechanic's lien, and the defendant set up, by a cross-complaint, a breach of the contract under which the lien was claimed. The court said:

"The cause being at issue on the complaint and the cross-complaint, and being called for trial, Charles A. Reichert moved the court for and demanded a jury to try the issue joined on his cross-complaint. This motion was denied, to which the said defendant excepted. The ruling on this motion was made a cause for a new trial, and presents the only question for our consideration on this appeal. The appellee's position is that the action to foreclose the mechanic's lien is strictly an equity proceeding, and triable by the court, without the aid of a jury; that the matters set out in the cross-complaint are properly matter in defense, and are necessarily drawn into equity by the complaint. The grievances complained of in the counterclaim grew out of the same contract and transactions which are the basis of the complaint. The defendant may, under such circumstances, elect whether he will use the injuries he has sustained as a defense by way of recoupment, or he may use it as a counterclaim or as an independent cause of action. Brower v. Nellis, 6 Ind. App. 325, 33 N. E. 672; Aultman v. Richardson (Ind. App.) 38 N. E. 532; Aultman v. Forgy (Ind. App.) 36 N. E. 939. If he use the matter in defense by way of recoupment, he can have no judgment over for any excess of damages. If he use it as a counterclaim, he may have judgment over for the excess found due him. But in either event the plaintiff's right to a recovery will be defeated. As the plaintiff's right to a recovery in his equitable action is liable to be defeated by the counterclaim, the whole controversy is drawn into equity, and is triable by the court without the aid of a jury. Towns v. Smith, 115 Ind. 480, 16 N. E. 811; Martin v. Martin, 118 Ind. 227, 20 N. E. 763. It is true that the appellant might have elected to use the breach of the contract set out in his counterclaim as an independent cause of action, and have had the issues thereon tried by a jury; but, as he voluntarily brought it into an equitable proceeding, he will be bound to submit to the rules that govern in such proceedings. The court did not err in overruling the motion."

It will be seen that the case was decided on much the same theory as that upon which our original opinion with reference to the right to jury trial on a cross-complaint is based and, by his motion for rehearing, the defendant contended that:

"The matters set up by the defendant in his cross-complaint were pleaded because he was compelled to make answer to the plaintiff's action, or lose his day in court. If he had not defended, and a judgment had been rendered against him upon the complaint, he could not thereafter maintain an independent action upon the matters set out in his cross-complaint. He was compelled to make his defense, or lose his remedy. If he had not done so, a plea of former adjudication would have barred any action which he might have attempted to maintain thereafter upon such facts."

Thus it is seen that the appellant in that case raised the very question which we are now considering, contending, in effect that he was deprived of his right to jury trial on the cross-complaint because he was compelled to litigate the subject-matter thereof in that suit. In the opinion on rehearing, the court held that he was compelled to present that defense or lose his remedy on the facts but, notwithstanding such conclusion, adhered to the former opinion that he had not been deprived of the right to jury trial. The court said:

"This action is not a suit on a common count, to recover money due under a special contract, but it is a suit on the contract itself, alleging full performance on the plaintiff's part. The breach set up in the counterclaim was necessarily involved in the complaint. But it does not necessarily follow from this that the appellant was not entitled to a jury trial. This depends upon the nature of the issues joined on the complaint. If those issues were strictly legal, and not of an equitable character, then the appellant was entitled to a jury. If, however, the issues were of an equitable character, the issues joined on the counterclaim were, of necessity, drawn into equity. The foreclosure of a mechanic's lien is an equitable proceeding, and the matters contained on the counterclaim were necessarily drawn into equity. If appellant's contention should prevail, we might have this anomalous condition: The court, in trying the issues joined on the complaint, might find that the plaintiff had fully complied with the contract on his part, and the jury, in trying the issues joined on the counterclaim, might find that the plaintiff did not comply with all the conditions of the contract, and assess damages for the breach. We would then have two separate, distinct, and contradictory findings and adjudications of the same matter in the same action. Such a condition was never contemplated by our Code. Petition overruled."

Resuming our consideration of the South Carolina authorities, we find the Supreme Court of that state

to have held consistently that in a suit for mortgage foreclosure a defense, based on facts which, considered independently and alone, would form the basis of an independent action at law, upon being interposed in the equity suit is drawn into equity and triable to the court without a jury. McLaurin v. Hodges, 43 S. C. 187, 20 S. E. 991; Hunt v. Nolen, 46 S. C. 551, 24 S. E. 543; Sullivan Hardware Co. v. Washington et al., 47 S. C. 187, 25 S. E. 45; Pratt v. Timmerman, 69 S. C. 186, 48 S. E. 255; Gibbes v. Hamilton, 89 S. C. 438, 71 S. E. 1029; Welborn v. Cobb, 92 S. C. 384, 75 S. E. 691; Mobley Co. v. McLucas et al., 99 S. C. 99, 82 S. E. 986.

In Welborn v. Cobb, supra, the plaintiff Welborn was the assignee of the mortgagee, Dickson. He brought suit to foreclose, making Dickson and the mortgagor, Cobb, parties defendant. In his complaint he alleged that he was informed and believed that Cobb claimed the right to set-off against the mortgage debt the sum of $845, with interest, because of a deficiency in the acreage of the tract conveyed to him by Dickson on the ground that Dickson had falsely represented to him that it contained 138 acres when it contained only 113, and to the extent of the shortage the consideration of the notes and mortgage had failed. Dickson demurred on the ground that two causes of action, one of which was in favor of the defendant Cobb, had been improperly united, and that, by compelling him to then litigate with Cobb the question of damages claimed by reason of the alleged misrepresentation and shortage, he was deprived of his constitutional right to jury trial. The language of the opinion is particularly applicable here because it deals with the facts favorable to Cobb, both in their character as an independent cause of action and in that of a defense strictly. The court, after remarking that the case of Latimer v. Wharton, 41 S. C. 508, 19 S. E. 855, 44 Am. St. Rep. 739, seemed to have been misunderstood to some extent by the lower court, said:

"That case does not hold that, in so far as the equity

of a purchaser of land to be relieved from payment of the purchase money, or any part thereof, depends upon a mere failure of consideration, such equity can be set up only as a defense to an action can be set up only as a defense to an action for the purchase money. But that case does not hold, and we think no case can be found in our reports which does hold, that a failure of consideration which results from a breach of warranty. express or implied, or from fraud, accident, mistake. or misrepresentation, intentional or unintentional, cannot be asserted actively as a cause of action and afford ground for relief. Therefore, in so far as Cobb's equity depended upon a mere failure of consideration, he could be relieved in this action, or not at all; but in so far as it depended upon Dickson's misrepresentation, it was available to him, either as a separate cause of action against Dickson, or as a defense in this action. But appellant seems to overlook the fact that the same facts which constitute a cause of action may also constitute a de-defense. The facts here referred to are as a defense. Therefore there was no improper joinder of causes of action in the complaint.

"As to the right of a trial by jury: Where a defendant sets up, as a defense to an equitable cause of action, facts which grow out of that cause of action, or the transaction which gave rise to it, and are so interwoven with it as to be inseparable from it, the defense partakes of the nature of the cause of action and is equitable, and not triable by jury, as of right. In McLaurin v. Hodges, 43 S. C. 187, 20 S. E. 991, the action was to foreclose a mortgage. The defense was usury, and a counterclaim to recover double the usurious interest which had been paid was set up. Now, unquestionably, if the facts constituting that counterclaim had been set up in a separate action by the defendant against the plaintiff, the action would have been legal, and triable by jury. But, when set up as a defense the plaintiff's equitable cause of action for foreclasure, this court held that as it grew out of that cause of action, or the transaction which gave rise to it, and was inseparable from it, and as its determination would directly affect the amount recoverable on the equitable cause of action, it was an equitable defense and triable by the court. In Hunt v. Nolen, 46 S. C. 553, 24 S. E. 544, the court said: 'This action for foreclosuse is on the equity side of the court, and the defense is that there was a partial failure of consideration, arising out of the transaction in which the mortgage was given. The issues are therefore all equitable in their nature.' To the same effect is Pratt v. Timmerman, 69 S. C. 187, 48 S. E. 255, and numerous other cases might be cited. Besides, there are numerous instances in which equity administers legal rights which arise incidentally or collaterally in causes of which it has taken jurisdiction. Hughes v. Kirkpatrick, 37 S. C. 161, 15 S. E. 912; Jenkins v. Jenkins, 83 S. C. 544, 65 S. E. 736; Ex parte Wilson, 84 S. C. 447, 66 S. E. 675."

So, in this case, when we consider the subject-matter of appellants' cross-complaint strictly as a defense to the equitable relief sought by plaintiff, its determination would necessarily affect the amount and extent of plaintiff's relief in his equity suit, and would thereby be drawn into equity for consideration and adjudication by the chancellor without the aid of a jury. It follows that appellants' motion for rehearing should be denied, and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.